**Glen Kermit TILL and Bettie F. Till, Plaintiffs-Appellants,**

v.

**UNIFIRST FEDERAL SAVINGS AND LOAN ASSOCIATION and Wortman & Mann, Inc., Defendants-Appellees.**

No. 80–3640.

United States Court of Appeals,
Fifth Circuit.
Unit A

Aug. 7, 1981.

Rehearing Denied September 21, 1981.

---

Affirmed in part, and vacated and remanded in part.

Brown, Circuit Judge, concurred and filed opinion.

Gary D. Thrash, Jackson, Miss., for plaintiffs-appellants.

Daniel J. Goldberg, Matthew G. Ash, Washington, D.C., for amicus U.S. League of Sav. Associations.

Fred L. Banks, Jr., Jackson, Miss., for American Sav. and Loan League.

Brunini, Grantham, Grower & Hewes, George P. Hewes, III, Lawrence E. Allison, Jr., R. Wilson Montjoy, II, Jackson, Miss., for defendants-appellees.

Before BROWN, GOLDBERG and AINSWORTH, Circuit Judges.

AINSWORTH, Circuit Judge:

Appellants Glen and Bettie Till appeal from an adverse summary judgment by the district court dismissing their suit for damages against defendants Unifirst Federal Savings and Loan Association (Unifirst) and Wortman & Mann, Inc. (W&M), predicated on the alleged failure of defendants to comply with the provisions of the National Flood Insurance Program, 42 U.S.C. §§ 4012a(b) and 4104a (and all amendments),[1] and on state common law causes of action for fraud and negligence. This appeal presents for the first time the novel question whether a private right of action for damages against a federally insured savings and loan association is implied for failure to comply with the federal flood insurance laws. The district court held that no private right of action existed under the federal statutes and that all other claims presented by appellants failed since they were dependent upon implication of the private right of action in federal law. We affirm the district court's holding that the federal flood insurance statutes imply no private right of action cognizable in federal law. However, we vacate dismissal of the state common law causes of action and direct that they be remanded to the state court from which the suit originated.

I. Facts

Glen and Bettie Till purchased a residence in Jackson, Mississippi, on June 20,

---

1. 42 U.S.C. § 4012a(b) provides as follows:

(b) Each Federal instrumentality responsible for the supervision, approval, regulation, or insuring of banks, savings and loan associations, or similar institutions shall by regulation direct such institutions not to make, increase, extend, or renew after the expiration of sixty days following December 31, 1973, any loan secured by improved real estate or a mobile home located or to be located in an area that has been identified by the Secretary as an area having special flood hazards and in which flood insurance has been made available under this chapter, unless the building or mobile home and any personal property securing such loan is covered for the term of the loan by flood insurance in an amount at least equal to the outstanding principal balance of the loan or to the maximum limit of coverage made available with respect to the particular type of property under the chapter, whichever is less.

42 U.S.C. § 4104a provides as follows:

Each Federal instrumentality responsible for the supervision, approval, regulation, or insuring of banks, savings and loan associations, or similar institutions shall by regulation require such institutions, as a condition of making, increasing, extending, or renewing (after the expiration of thirty days following August 22, 1974) any loan secured by improved real estate or a mobile home located or to be located in an area that has been identified by the Secretary under this chapter or Public Law 93–234 as an area having special flood hazards, to notify the purchaser or lessee (or obtain satisfactory assurances that the seller or lessor has notified the purchaser or lessee) of such special flood hazards, in writing, a reasonable period in advance of the signing of the purchase agreement, lease, or other documents involved in the transaction.

1975, for $170,000 which was paid in part by a $75,000 secured loan obtained from Unifirst. In the spring of 1979, the Pearl River swelled over its banks and flooded much of Jackson and the surrounding area including the Tills' home.

The Tills filed this complaint in Mississippi state court seeking to recover $175,847.67 in special damages and $1,758,476.70 in punitive damages from defendants as a result of their losses in the 1979 flood. In their complaint, plaintiffs alleged that at the time the property was purchased, the area had been designated by the Department of Housing and Urban Development (HUD) as a flood hazard area. Accordingly, they claimed that under the federal flood program instituted by the National Flood Insurance Act of 1968 and the Flood Disaster Protection Act of 1973, Unifirst had two duties: (1) to notify the Tills at least ten days prior to closing their loan that the property was located in a flood hazard area,

and (2) to require the purchase of flood insurance before executing the loan. Plaintiffs further alleged that Unifirst and its wholly owned subsidiary, W&M, failed to fulfill these duties. As a result of defendants' alleged failure to comply with federal law, the Tills asserted they were entitled to recover damages under state common law causes of action for fraud and negligence.

▆ Defendants removed the case pursuant to 28 U.S.C. § 1441 to the United States District Court for the Southern District of Mississippi, claiming federal jurisdiction under 28 U.S.C. §§ 1331 and 1337.[2] In federal court, plaintiffs made it clear that they sought damages from defendants through a private right of action implied from the federal flood statutes, as well as seeking relief through their general state claims. Following a lengthy discovery period, defendants filed a motion to dismiss under Fed.R.Civ.P. 12(b)(6). Both sides

---

**2.** Federal courts are vested with jurisdiction pursuant to both 28 U.S.C. §§ 1331(a) and 1337 over those claims arising under the laws of the United States. The Supreme Court in *Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946) interpreted the statute which is now section 1331(a) as follows:

> Jurisdiction ... is not defeated ... by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy.

Under this analysis of section 1331, it has long been recognized that where a plaintiff asserts that a private right of action is implied from federal law, federal courts do have the requisite subject matter jurisdiction to determine whether such a federal remedy exists. *See, e. g., Davis v. Passman*, 442 U.S. 228, 236, 99 S.Ct. 2264, 2272, 60 L.Ed.2d 846 (1979); *Cort v. Ash*, 422 U.S. 66, 71, 95 S.Ct. 2080, 2084–85, 45 L.Ed.2d 26 (1975); *National Railroad Passenger Corp. v. National Association of Railroad Passengers*, 414 U.S. 453, 456, 94 S.Ct. 690, 692, 38 L.Ed.2d 646 (1974); *Rogers v. Frito Lay, Inc.*, 611 F.2d 1074, 1078 (5th Cir. 1980), *cert. denied*, 449 U.S. 889, 101 S.Ct. 246, 66 L.Ed.2d 115 (1980); *Clark v. Gulf Oil Corp.*, 570 F.2d 1138, 1142–44 (3d Cir. 1977), *cert. denied*, 435

U.S. 970, 98 S.Ct. 1611, 56 L.Ed.2d 62 (1978); *Girardier v. Webster College*, 563 F.2d 1267, 1270 (8th Cir. 1977). However, a claim does not arise under the law of the United States pursuant to either sections 1331 or 1337 if the relief sought is based entirely upon a state cause of action in which regulations established by a federal statute are used merely as further evidence of the right to recover under state law. *See Lowe v. General Motors Corp.*, 624 F.2d 1373, 1379–81 (5th Cir. 1980); *Jacobson v. New York, N.H. & H.R. Co.*, 206 F.2d 153, 156–58 (1st Cir. 1953); *aff'd*, 347 U.S. 909, 74 S.Ct. 474, 98 L.Ed. 1067 (1954); *Moody v. McDaniel*, 190 F.Supp. 24, 25–29 (N.D.Miss. 1960).

In the present case, appellants do not merely assert that under state law they are entitled to recover damages for appellees' alleged noncompliance with the flood statute. Rather, they specifically claim that a remedy exists pursuant to the federal flood law itself. Appellants contended before the district court, as they have before this court, that the National Flood Insurance Program implies a private right of action sufficient to provide a damage remedy without any assistance from state law. Thus, the fraud and negligence actions are pendent state law claims whose existence in federal court depends solely upon appellants' theory of a private right of action. *E. g., Touche Ross & Co. v. Redington*, 442 U.S. 560, 566 n.8 & 567 n.9, 99 S.Ct. 2479, 2484 n.8 & 2485 n.9, 61 L.Ed.2d 82 (1979); *United States v. Capeletti Bros., Inc.*, 621 F.2d 1309, 1311 (5th Cir. 1980).

filed memoranda and other materials on the issues presented by the motion and a hearing on the motion was conducted by the district court. The district judge, after noting that both parties had presented materials and the court had considered matters that were outside the scope of the pleadings, ruled the Rule 12(b)(6) motion would be treated as a motion for summary judgment. Accordingly, the district court granted summary judgment to defendants dismissing the suit of plaintiffs, holding that no private right of action was implied from the federal law and that all alleged common law actions were dependent upon the existence of the federal action.

On appeal, appellants assert that the district court erred in holding that there is no implied federal private cause of action under the federal flood laws. They also contend that the common law actions in their original complaint are in no way dependent on the federal law.[3]

## II. Federal Flood Laws

From 1968 to 1977, Congress passed a number of enactments which compose the National Flood Insurance Program (the "Program"). The first enactment, the National Flood Insurance Act of 1968, created a nationwide program to make flood insurance available to property owners in flood prone areas and to encourage the adoption by local communities of sound land use policies designed to diminish damage from flooding.[4] In establishing this program, Congress summarized the factors that made this action necessary as follows:

(a) The Congress finds that (1) from time to time flood disasters have created personal hardships and economic distress which have required unforeseen disaster relief measures and have placed an increasing burden on the Nation's resources; (2) despite the installation of preventive and protective works and the adoption of other public programs designed to reduce losses caused by flood damage, these methods have not been sufficient to protect adequately against growing exposure to future flood losses; (3) as a matter of national policy, a reasonable method of sharing the risk of flood losses is through a program of flood insurance which can complement and encourage preventive and protective measures; and (4) if such a program is initiated and carried out gradually, it can be expanded as knowledge is gained and experience is appraised, thus eventually making flood insurance coverage available on reasonable terms and conditions to persons who have need for such protection.

42 U.S.C. § 4001(a).[5]

The procedures created by the 1968 Act were voluntary in nature. Congress anticipated that the local communities would voluntarily adopt the land use restrictions necessary for its citizens to participate in the flood insurance plan. However, it became clear that local acceptance of the voluntary program was inadequate.[6] Accordingly, Congress enacted the Flood Disaster Protection Act of 1973 which amended the Program to essentially make its adoption by the local governing bodies mandatory.

The 1973 Act used severe sanctions against non-participating communities to encourage enrollment in the Program. Any community not participating by July 1, 1975 would receive neither federal financial as-

---

**3.** Appellants also assert on appeal that the district court should have dismissed the case according to Fed.R.Civ.P. 12(b)(6) and not on summary judgment. In view of our ruling here, it is unnecessary to decide this issue.

**4.** The 1968 Act set out that the Program was to be administered by HUD. Accordingly, the Secretary of HUD was directed to identify and make public all flood plain areas across the country and to determine the boundaries of the high flood risk zones within all such areas.

National Flood Insurance Act of 1968 § 1360, 42 U.S.C. § 4101(a).

**5.** Further congressional findings and purposes in enacting the National Flood Insurance Program are listed in the remaining subsections of 42 U.S.C. § 4001.

**6.** *Texas Landowners Rights Ass'n v. Harris*, 453 F.Supp. 1025, 1027 (D.D.C.1978), aff'd, 598 F.2d 311 (D.C.Cir.1979), *cert. denied*, 444 U.S. 927, 100 S.Ct. 267, 62 L.Ed.2d 184 (1980).

sistance for acquisition or construction purposes [7] nor federally related financing by private lending institutions for use in HUD designated flood risk zones.[8] Participation was conditioned upon adoption by the local community of the HUD promulgated guidelines for land use. Thus, a community not adopting the land use controls and participating in the Program was virtually cut off from federal assistance.

In those areas such as Jackson that did adopt the requisite land use controls, the 1973 Act further directed the appropriate federal supervisory agencies [9] to adopt regulations requiring lenders not to make loans in flood zones unless the property owners first purchased flood insurance. 42 U.S.C. § 4012a(b).[10] This provision was followed with an enactment by Congress in 1974 that required the same federal supervisory agencies to promulgate regulations directing lenders to notify borrowers, a reasonable period in advance of closing, that the property is located in a HUD identified flood risk zone. 42 U.S.C. § 4104a.[11] It is upon these two provisions that appellants claim they are entitled to a private right of action for damages from the 1979 Jackson flood.

### III. Implied Private Right of Action

■ Once again we are asked to find from the language and history of a federal statute, an implied cause of action not explicitly provided for by Congress. The standards which such a cause of action must meet before it may be implied have become increasingly more stringent. *Touche Ross*

& *Co. v. Redington*, 442 U.S. 560, 578, 99 S.Ct. 2479, 2490, 61 L.Ed.2d 82 (1975). The factors to be considered in this regard were delineated by the Supreme Court in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). They are as follows: (1) whether the plaintiff is one of a class for whose especial benefit the statute was enacted; (2) whether there is an indication of legislative intent to create or deny such remedy; (3) whether such a remedy would be inconsistent with the underlying legislative purpose; and (4) whether the cause of action is one traditionally relegated to state law. *Cort v. Ash, supra*, 422 U.S. at 78, 95 S.Ct. at 2088.

■ The theory of implied private actions is, of course, basically a matter of statutory construction. *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979) (hereinafter *TAMA)*; *Belluso v. Turner Communications Corp.*, 633 F.2d 393, 395 (5th Cir. 1980). In interpreting federal statutes, *Cort* and its progeny all focus upon the "ultimate issue" of whether it was Congress' intent to create a private remedy. *California v. Sierra Club*, —— U.S. ——, ——, 101 S.Ct. 1775, 1779, 68 L.Ed.2d 101 (1981); *Rogers v. Frito Lay, Inc.*, 611 F.2d 1074, 1078 (5th Cir. 1980), *cert. denied*, 449 U.S. 889, 101 S.Ct. 246, 66 L.Ed.2d 115 (1980). To that end, our search to determine the congressional intent concerning sections 4012a(b) and 4104a [12] must con-

---

**7.** Flood Disaster Protection Act of 1973 § 202(a), 42 U.S.C. § 4106(a).

**8.** Flood Disaster Protection Act of 1973 § 202(b). However, this restriction was removed by the Housing and Community Development Act of 1977 and replaced with a notice requirement. Pub.L.No.95–128, § 703, 91 Stat. 1144 (codified at 42 U.S.C. § 4106(b), as amended). For a general discussion of the sanctions *see Texas Landowners, supra* note 6, at 1027–28.

**9.** Congress did not place the burden of implementing and enforcing the Program directly upon the lending institutions. Rather, this responsibility was placed upon federal agencies such as the Board of Governors of the Federal Reserve System, the Federal Deposit Insurance Corporation, the Comptroller of the Currency,

the Federal Home Loan Bank Board, the Federal Savings and Loan Insurance Corporation, and the National Credit Union Association whose duties include the regulation and supervision of lenders. *See* 42 U.S.C. § 4003(a)(5).

**10.** The regulation issued by the Federal Home Loan Bank Board to implement this requirement is found at 12 C.F.R. § 523.29(b).

**11.** The regulation issued by the Federal Home Loan Bank Board to implement this requirement is found at 12 C.F.R. § 523.29(e). The regulation directed that notice must be given ten days prior to closing.

**12.** Appellees, as well as the savings and loan associations participating herein as amicus curiae, argue forcefully that the notice require-

sider the policies and purposes of the overall legislative scheme of which these two sections are a component.[13]

■ In deciding the first *Cort* factor—whether appellants are the especial beneficiaries of sections 4012a(b) and 4104a—we must determine if Congress intended to "create a federal right in favor of the plaintiff." *Cort v. Ash, supra,* 422 U.S. at 78, 95 S.Ct. at 2088. Accordingly, the proper focus is upon the "right- or duty-creating language of the statute [which] has generally been the most accurate indicator or the propriety of implication of a cause of action." *Cannon v. University of Chicago,* 441 U.S. 677, 690 n.13, 99 S.Ct. 1946, 1954 n.13, 60 L.Ed.2d 560 (1979); *United States v. Capeletti Bros., Inc.,* 621 F.2d 1309, 1313 (5th Cir. 1980); *Rogers v. Frito Lay, Inc., supra,* 611 F.2d at 1079.

■ Even cursory evaluation of the statutory language in sections 4012a(b) and 4104a reveals that no clearly defined right exists in favor of borrowers in either statute. The statutes merely require lending institutions to notify borrowers of flood plains and require appropriate flood insurance. However, this duty is imposed only indirectly on lenders. It is upon the various financial regulatory agencies—in this case, the Federal Home Loan Bank Board—that Congress directly assessed the responsibility for carrying out its plan.

The language of both statutes is therefore much like the statutes we considered in *United States v. Capeletti Bros., Inc.* and *Rogers v. Frito Lay, Inc.* In both cases, the statutory duty was imposed directly on federal agencies. Thus, we held that the benefits flowing to the plaintiffs were derived indirectly and not as a result of any private right of action conferred upon their class. *United States v. Capeletti Bros., Inc., supra,* 621 F.2d at 1314; *Rogers v. Frito Lay, Inc., supra,* 611 F.2d at 1079–80. *See also Cannon v. University of Chicago, supra,* 441 U.S. at 693 n.14, 99 S.Ct. at 1955 n.14. This conclusion is equally applicable to the circumstances in the present case.

Appellants argue, regardless of the statutory language, that borrowers are the primary beneficiaries of the flood insurance and notice requirements and, as such, they pass the *Cort* especial benefit test. However, even if borrowers could be considered primary beneficiaries of the flood laws, appellants would still not be the "especial beneficiaries." As previously stated, the *Cannon v. University of Chicago* test requires a showing that borrowers are granted federal rights under the statute; here, only duties are placed on the various regulatory authorities.

However, appellants fail at the outset even to establish that borrowers are the primary beneficiaries of the flood statutes.

ment of section 4104a is not even applicable to defendants in the present case. They point out that it is redundant and unnecessary to require a lender to give notice of a flood hazard area where, pursuant to section 4012a(b), the lender is already required to direct the borrower to first obtain flood insurance before the loan can be executed. Accordingly, it was the obvious intent of Congress to apply the notice requirement only in those communities where the flood program had not been adopted and flood insurance was neither required nor available in the flood zones. Thus, the argument proceeds, since Jackson adopted the Program, section 4014a was inapplicable and lenders only had to follow the insurance requirement of section 4012a(b).

The notice requirement was an amendment enacted in 1974. Its legislative history is short. Although appellees' argument is logical and plausible, there is no distinction in the statute itself. We find it unnecessary and inadvisable

to pass on this issue of statutory construction since, regardless of its applicability, we hold that Congress did not supply a private cause of action under section 4104a upon which appellants can recover. *See Anderson v. United States,* 417 U.S. 211, 218, 94 S.Ct. 2253, 2259, 41 L.Ed.2d 20 (1974).

**13.** It is axiomatic under the principles of statutory construction that courts must consider the entire corpus of pertinent law to ensure that any interpretation would be consistent with the purposes enunciated by Congress. *See Kokoszka v. Belford,* 417 U.S. 642, 650, 94 S.Ct. 2431, 2436, 41 L.Ed.2d 374 (1974); *Weinberger v. Hynson, Westcott & Danning, Inc.,* 412 U.S. 609, 631–32, 93 S.Ct. 2469, 2484, 37 L.Ed.2d 207 (1973). In *Belluso v. Turner Communications Corp.,* 633 F.2d 393, 396 (5th Cir. 1980), we recognized this principle of statutory interpretation applied to the implication doctrine.

It would be disingenuous to suggest that when Congress passed the Program it did not intend to help those borrowers who had been damaged by flooding. On the other hand, borrowers of federal funds were not the only concern of Congress. Clearly, the principal purpose in enacting the Program was to reduce, by implementation of adequate land use controls and flood insurance, the massive burden on the federal fisc of the ever-increasing federal flood disaster assistance.[14] Indeed, in requiring flood insurance the concern for the protection of lenders was just as great, if not more so, than the concern for borrowers.[15] Lenders are only directed to require flood insurance for the amount and term of the outstanding loan balance. 42 U.S.C. § 4012a(b). There is no requirement that the flood insurance cover the equity of the borrower. Plainly, Congress was interested in protecting the lending institutions whose deposits the federal regulatory agencies insured. As for the notice requirement, the legislative history indicates that it too was enacted in part to help stem the development of flood hazard areas and further diminish the burden of federal disaster assistance.[16]

In short, appellants are not the *especial* beneficiaries of sections 4012a(b) and 4104a

14. In 1968, House Report No. 1585 discussed the purposes and need for a flood insurance program. It stated as follows:

Heavy losses over the years from hurricanes in the coastal areas and from storms in inland areas of the Nation dramatize the lack of insurance protection against flood damage. Insurance protection against the risk of destruction caused by tornadoes and other natural catastrophes is generally available, but it is not available against the risk of flood loss.

Communities along the seacoast or in a river basin become completely immobilized following a major flood. Usually they must depend on the Federal Government and voluntary relief agencies to provide various forms of assistance. Some State and local governments have limited programs to assist a flood-stricken area, but disaster relief from all of these sources is inadequate to provide for the necessary restoration of heavily damaged areas. These facts underline the need for a program which will make insurance against flood damage available, encourage persons to become aware of the risk of occupying the flood plains, and *reduce the mounting Federal expenditures for disaster relief assistance.* (emphasis added)

H.R.Rep.No.1585, 90th Cong., 2d Sess., *reprinted in* [1968] U.S.Code Cong. & Ad.News 2873, 2966–67.

For further evidence of the interest of Congress in reducing the burden on federal funds through land use controls and insurance, *see* S.Rep.No.93–583, 93d Cong., 1st Sess., *reprinted in* [1973] U.S.Code Cong. & Ad.News 3217, 3218–20, 3223.

15. The National Flood Insurance Program grew out of a 1966 HUD study, the conclusion of which became a part of a Senate report on the Federal Flood Disaster Relief Act of 1973. The recommendation of that study states in pertinent part as follows:

To encourage widespread purchase of flood insurance, the Congress should be requested to declare that as a matter of national policy all lending institutions entrusted with savings or deposits and under any form of Federal supervision of insurance of savings or deposits shall require in high risk areas flood insurance at unsubsidized rates on all new mortgages based on new residences, as they now generally require fire insurance; and that such flood insurance *be considered in the interest of the borrowers, the lending institutions, and the savers and depositors*; and these institutions might well encourage flood insurance by borrowers in low risk areas. (emphasis added)

S.Rep.No.93–583, 93d Cong., 1st Sess. *reprinted in* [1973] U.S.Code Cong. & Ad.News 3217, 3220.

16. There is little legislative history on 42 U.S.C. § 4104a. However, in the short statement of purpose by the amendment's sponsor, it is clear that one reason for the notice requirement was to discourage flood zone development in order to prevent using federal funds through such agencies as the Federal Housing Authority (FHA) and Small Business Administration (SBA) to finance the development and then later again using federal funds to rebuild with disaster relief. The amendment's sponsor stated in pertinent part as follows:

This [amendment] has to do with the development of commercial and private housing developments in flood plain areas, and these developments often add to the flood hazards in these areas. Many times it is a commercial development or a private housing development that is financed through the Federal Government, through FHA or SBA or some other program.

Then when the flood happens and damage results, the Federal Government is called upon again to help those who were the victims.

120 Cong.Rec. 20308 (1974).

in view of the fact that the only duties imposed therein are upon the various federal regulatory agencies and the clear indication of concern not merely for borrowers but also for the federally insured lending institutions.

Under the second *Cort* factor, our quest is to search for "any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one." *Cort v. Ash, supra,* 422 U.S. at 78, 95 S.Ct. at 2088. The Supreme Court forewarns that in cases where the statutes and legislative history are silent on the question of a private remedy, "implying a private right of action on the basis of congressional silence is a hazardous enterprise, at best." *Touche Ross & Co. v. Redington, supra,* 442 U.S. at 571, 99 S.Ct. at 2486.

Our examination of the legislative history reveals no evidence of specific congressional intent to vest appellants with any federal right to damages for a violation of the federal flood laws under sections 4012a(b) and 4104a. Instead, the only discernible evidence of intent suggests no such private remedy was envisioned.

■ Congress, by directing the federal financial supervisory agencies to adopt regulations to implement the flood insurance and flood hazard notice requirements, has entrusted enforcement of these requirements to those agencies. In this case, the Federal Home Loan Bank Board (FHLBB) has the authority to issue cease and desist orders against appellees' officers,[17] to terminate unsafe or unsound practices,[18] to impose administrative remedies, including monetary penalties,[19] and to require affirmative action to prevent or correct violations.[20] Existence of this administrative scheme of enforcement is strong evidence that Congress intended the administrative remedy to be exclusive. *E. g., Belluso v. Turner Communications Corp., supra,* 633 F.2d at 397; *Smith v. Cotton Bros. Baking*

*Co., Inc.,* 609 F.2d 738, 741 (5th Cir. 1980). Indeed, it is clear under the maxim—*expressio unius est exclusio alterius*—that a pervasive remedial scheme provided by Congress is an indication there was no intent to provide an additional private remedy. *See TAMA, supra,* 444 U.S. at 19, 100 S.Ct. at 247; *National Railroad Passenger Corp. v. National Ass'n of Railroad Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974); *United States v. Capeletti Bros., Inc., supra,* 621 F.2d at 1315.

Furthermore, it is noteworthy that Congress did provide for private rights of action in certain other sections of the flood insurance laws. Under 42 U.S.C. §§ 4053 and 4072, flood insurance policyholders may sue on their policies in federal court. Likewise, owners and lessees of property, as well as communities which feel a flood hazard designation is incorrect, can appeal from an administrative review to federal court for redesignation pursuant to 42 U.S.C. § 4104. The Supreme Court in *Touche Ross* refused to imply a private cause of action partly because other sections of the same act expressly provided for private remedies. The Court reasoned that "when Congress wished to provide a private damages remedy, it knew how to do so and did so expressly." *Touche Ross & Co. v. Redington, supra,* 442 U.S. at 572, 99 S.Ct. at 2487.

Also useful is the opinion of the FHLBB itself. The Supreme Court directs that in matters of statutory interpretation, courts should be attentive "to the views of the administrative entity appointed to apply and enforce a statute." *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 565, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980). In this case, affidavits of three members of the FHLBB indicate their understanding that the statutory provisions do not encompass a private right of action.[21]

Finally, it is simply inconsistent and implausible to find from the federal flood laws

---

**17.**  12 U.S.C. § 1464(d)(2)(A).

**18.**  12 U.S.C. § 1464(d)(4).

**19.**  12 U.S.C. § 1464(d)(8)(B).

**20.**  12 U.S.C. § 1464(d)(2)(A).

**21.**  In the brief remarks on the House floor, the sponsor of the notice requirement compared the legislation to an extension of the truth-in-lending concept.  120 Cong.Rec. 20308 (1974).

that Congress intended to reduce the burden of federal disaster assistance by shifting it to federally supervised lenders, whose deposits are insured by federal agencies. Such a result would subject lenders like appellees to a liability not shared by other significant sources of funding, such as insurance companies, mortgage bankers, and state-chartered savings and loan associations, upon which the federal regulations do not apply.

■ No private remedy exists in a statute which does not provide private rights to an identifiable class, does not prohibit conduct as unlawful and whose legislative history is silent on the existence of a private cause of action. *Touche Ross & Co. v. Redington, supra,* 442 U.S. at 576, 99 S.Ct. at 2489. The third and fourth factors of the *Cort* test are relevant only if the first two indicate an intent to create the private remedy. *California v. Sierra Club, supra,* —— U.S. at ——, 101 S.Ct. at 1774. The initial two factors indicate that no such intent can be ascertained from the federal flood laws; therefore, appellants' quest for damages pursuant to 42 U.S.C. §§ 4012a(b) and 4104a fails.

### IV. State Claims

The district court, by granting summary judgment against all claims, dismissed appellants' state claims for fraud and negligence[22] on their merits. The court held that "[i]nasmuch as all of Plaintiffs' claims herein are dependent upon the implication of a private cause of action, Plaintiffs' claims must be dismissed." Appellees, attempting to support the court's decision, reason that state common law does not provide all the elements of the asserted fraud or negligence. They assert that both causes of action require a breach of duty and that the only duty here arises from federal enactments. Therefore, they contend, there must exist a private cause of action in the federal statutes themselves before appellants can recover from the state based claims.

Whether this is true is a matter of state law. *See, e. g., Moore v. Chesapeake & Ohio Ry.,* 291 U.S. 205, 211–17, 54 S.Ct. 402, 404–06, 78 L.Ed. 755 (1934); *Crane v. Cedar Rapids & Iowa City Railway Co.,* 395 U.S. 164, 166–67, 89 S.Ct. 1706, 1708–09, 23 L.Ed.2d 176 (1969); *Moody v. McDaniel,* 190 F.Supp. 24, 25–29 (N.D.Miss.1960); W. Prosser, Handbook of the Law of Torts § 36, at 200–02 (4th ed. 1971).[23] This can best be determined by remand of the case to the Mississippi state court in which the suit was initially filed.[24]

■ In removal cases the federal court may, in its sound discretion pursuant

---

Appellants rely on this comparison as evidence of intent to create a private right of action. Their reliance is misplaced. "[T]he Truth in Lending Act provides 'detailed remedial machinery' to redress violations of the Act." *Gerasta v. Hibernia National Bank,* 575 F.2d 580, 583 (5th Cir. 1978). Additionally, Congress placed stringent substantive and procedural limits on liability under the Act. *E. g.,* 15 U.S.C. § 1640(a)(2) & (e). Other than the disclosure requirement, the similarity between 42 U.S.C. § 4104a and the Truth-in-Lending Act vanishes. If Congress had intended section 4104a to provide the same private remedy, it would have also provided for the similar "machinery" as well as substantive and procedural safeguards upon which liability to borrowers could be fairly determined.

22. On appeal, appellants charge that in addition to fraud and negligence they are also entitled to recover damages under the separate common law theories for breach of contract and breach of duty undertaken to be performed. In view of our ruling here, these additional issues may be presented to the Mississippi state court for its consideration.

23. For a general discussion of the effects of federal regulations on state common law see Hazen, *Implied Private Remedies Under Federal Statutes; Neither a Death Knell Nor a Moratorium—Civil Rights, Securities Regulation, and Beyond,* 33 Vand.L.Rev. 1333, 1335–47 (1980); Note, *Implied Causes of Action in the State Court,* 30 Stan.L.Rev. 1243, 1243–53 (1978).

24. In *Lowe v. General Motors Corp.,* 624 F.2d 1373 (5th Cir. 1980), this court was compelled to determine the effect of a federal statute on state law due to diversity jurisdiction. There, we held that under Alabama law a plaintiff could recover in a wrongful death action for violations of the National Traffic and Motor Vehicle Safety Act of 1966. *Lowe v. General Motors Corp., supra,* 624 F.2d at 1379–80.

to 28 U.S.C. § 1441(c), return the parties to the state court for the trial of pendent state law claims. *Ondis v. Barrows,* 538 F.2d 904, 908 (1st Cir. 1976); *Brough v. United Steelworkers of America, AFL–CIO,* 437 F.2d 748, 750 (1st Cir. 1971). Since this case was originally filed in state court, it would be unreasonable to dismiss without prejudice and require appellants to file anew in state court. Therefore, the district court erred in granting a summary judgment on all claims, since its holding dismissed the Mississippi common law claims with prejudice.

We therefore remand this case to the district court with direction to remand it to the Mississippi state court in which it was originally filed.

AFFIRMED IN PART; VACATED AND REMANDED IN PART.

JOHN R. BROWN, Circuit Judge, concurring:

I concur fully in the opinion for the Court.

Although, on my approach, it might have been preferable that we simply remand to the District Court for consideration of the state-based claim, it is still open to the State Court on remand to apply, as relevant, perhaps controlling, substantive federal law not going solely to jurisdiction or the implication of a private right of action, the National Flood Insurance Program, 42 U.S.C. § 4012a(a, b) (and all amendments).

This Court has fully approved this approach.

*Lowe v. General Motors Corp.,* 624 F.2d 1373, 1379–81 (5 Cir. 1980).

---

There is no diversity in the present case. The fraud and negligence claims in federal court were only pendent state claims. *See* note 2 *supra.* Under the principles of comity and fairness, the Supreme Court in *United Mine Workers v. Gibbs,* 388 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) held that in cases where the federal claim is dismissed before trial, as in the instant case, the pendent state claims should be left to state tribunals. *See Touche Ross & Co. v. Redington, supra,* 442 U.S. at 566 n.8, 99 S.Ct. at 2484 n.8; *Lowe v. General Motors Corp., supra,* 624 F.2d at 379; *United States v. Capeletti Bros., Inc.,* 621 F.2d 1309, 1317–18 (5th Cir. 1980).