Kenneth W. GATLIN, et al., Plaintiffs,

v.

COUNTRYSIDE INDUSTRIES, INC., et al., Defendants.

Civ. A. No. CA3–82–2018–D.

United States District Court, N.D. Texas, Dallas Division.

June 7, 1983.

William A. Smith, Smith, Smith & Florsheim, Dallas, Tex., for plaintiffs.

---

**23.** *See id.,* at 656.

**24.** 18 U.S.C. § 3161(h)(3)(B).

H. Robert Powell, Hughes & Hill, Clifton T. Hutchinson, William Charles Bundren, Jackson, Walker, Winstead, Cantwell & Miller, Dallas, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

ROBERT M. HILL, District Judge.

Came on for consideration before the Court the motion of Kenneth W. Gatlin *et al.* ("Gatlin") to remand this action to the state court. The issue before this Court is whether one of the causes of action alleged in Gatlin's original complaint "arises under" the Constitution, laws, or treaties of the United States. U.S. Const. art. III; 28 U.S.C. §§ 1331, 1337. Having considered the parties' briefs in light of the applicable law, the Court is of the opinion that this action was improperly removed and that Gatlin's motion to remand should be granted.

### I. *The Well-Pleaded Complaint*

Defendant Ashlock-Harper Motor Co. sold Gatlin a mobile home that had been manufactured by Defendant Countryside Industries, Inc. ("Countryside"). Gatlin raises the following allegations in his original complaint: (1) the defendants sold the mobile home without providing notice of the possible release of formaldehyde gas, which notice is required by the Texas Manufactured Housing Standards Act, Tex.Rev. Civ.Stat.Ann. art. 5221f § 20 (Vernon Supp. 1982–1983) (the "Texas Act"); (2) defendants failed to comply with the warranty provisions of § 14 of the Texas Act; (3) Countryside shipped the mobile home into the state in violation of section 6(a) of the Texas Act, which mandates compliance with the requirements of the National Manufactured Home Construction Safety Standards Act, 42 U.S.C.A. § 5401 *et seq.* (1977 & Supp.1983) (the "National Act") and

HUD regulations; and (4) Countryside violated section 7(a) of the Texas Act by failing to obtain a certificate of registration.

Pursuant to section 17(d) of the Texas Act Gatlin claims that each of the above-alleged violations constitutes a deceptive trade practice actionable under the Texas Deceptive Trade Practices & Consumer Protection Act, Tex.Bus. & Com.Code § 17.46 (Vernon Supp.1982–1983). Further claims are made for breach of implied warranty, Tex.Bus. & Com.Code §§ 2.314–.315 (Vernon 1968), unconscionable practices under the Deceptive Trade Practices Act § 17.50, strict liability, and negligence.

Gatlin filed this action in state court whereupon Countryside removed the case to federal court, alleging that Gatlin's claim against it for violation of section 6 of the Texas Act fell within the original jurisdiction of the federal district courts. In opposition to the motion to remand, Countryside argues first, that the claim against Countryside is *separate* and *independent,* and that the entire case is properly removable under Title 28 U.S.C. section 1441(c),[1] and second, that all of the causes of action are based upon a *common* nucleus of operative facts making appropriate the assertion of pendent jurisdiction over state claims against all defendants in an action removed pursuant to section 1441(a).[2]

The liberality of alternative pleading has apparently found its way into legal briefing. In this instance, however, Countryside cannot rely upon the alternative basis of removal provided in section 1441(a) because Countryside alone petitioned for removal. An action is not removable under section 1441(a) unless *all* the defendants join in the petition. *Gableman v. Peoria, D. & E. Ry. Co.,* 179 U.S. 335, 21 S.Ct. 171, 45

---

1. Title 28 U.S.C. § 1441(c), provides:

   Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or in its discretion, may remand all matters not otherwise within its original jurisdiction.

   *Id.*

2. Title 28 U.S.C. § 1441(a), provides:

   Except as otherwise expressly provided by Act of Congress, any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

   *Id.*

L.Ed. 220 (1900); *Tri-Cities Newspapers, Inc. v. Tri-Cities Printing Pressman & Assistants' Local 349,* 427 F.2d 325 (5th Cir. 1970). While one of several defendants can petition for removal under section 1441(c), the Court has serious doubts as to whether the claim against Countryside for violation of section 6(a) of the Texas Act should be considered a "separate and independent claim or cause of action." In lieu of struggling with the elusive concept of separate and independent, the Court has engaged the equally elusive concept of "arising under" jurisdiction, and concludes that the claim Countryside relies upon to petition for removal is not within the original jurisdiction of this Court.

## II. *Hybrid Statute: Incorporation of Federal Standards into State Law*

### A. The National Act

Congress enacted the Mobile Home Construction and Safety Standards Act in 1974 [3] with the stated purpose of "reduc[ing] the number of personal injuries and deaths and the amount of insurance costs and property damage resulting from mobile home accidents and [improving] the quality and durability of mobile homes." 42 U.S.C.A. § 5401. The National Act required the Secretary of HUD to establish safety standards which would supersede existing state standards that were not identical to the federal standards. 42 U.S.C.A. § 5403(d); *see* U.S.Code Cong. & Ad.News (93 Leg.Hist.) 4408–4416. The enforcement proceedings outlined in the National Act authorize the Secretary to seek civil and criminal penalties, as well as injunctive relief, against offenders, and to conduct inspections. 42 U.S.C.A. §§ 5410, 5413. Mobile home manufacturers are required to furnish dealers with a certification of conformity with federal standards. 42 U.S.C.A. § 5415. The version of the National Act reported by the Banking, Housing and Urban Affairs Committee contained provisions requiring the issuance of a warranty to first purchasers and permitting a civil action for damages by a mobile home owner based on non-compliance with federal standards. U.S.Code Cong. & Ad.News (93 Leg. Hist.) 4412, 4414. The bill as enacted, however, permits a civil action for damages only by a distributor or dealer as against a manufacturer. 42 U.S.C.A. § 5412. The rights of an individual purchaser are limited to receiving notification and correction of defects by the manufacturer. 42 U.S.C.A. § 5414.

Congressional intent to legislate uniform standards for the manufacture of mobile homes arose in part from a gap in state and local housing codes. *Kaiser Aluminum v. U.S. Consumer Product Safety,* 414 F.Supp. 1047, 1060 (D.Del.1976). The states, however, are given an opportunity under the National Act to receive federal grants and to propose state enforcement plans subject to approval by HUD. 42 U.S.C.A. §§ 5422, 5423. Two provisions in the National Act address the states' ability to participate in the formulation and enforcement of safety standards. Section 5403(d) provides:

> Whenever a Federal manufactured home construction and safety standard established under this chapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any manufactured home covered, any standard regarding construction or safety applicable to the same aspect of performance of such manufactured home which is not identical to the Federal manufactured home construction and safety standard.

*Id.* The state enforcement provision in section 5422(a) states:

> Nothing in this chapter shall prevent any State agency or court from asserting jurisdiction under State law over any manufactured home construction or safety issue with respect to which no Federal manufactured home construction and safety standard has been established pursuant to the provisions of section 5403 of this title.

---

**3.** The title of the National Act was changed by amendment in 1980 to Manufactured Home Construction and Safety Standards Act. Section 601 of Pub.L. 93–383, as amended by Pub.L. 96–399, Title III, § 308(c)(5), Oct. 8, 1980, 94 Stat. 1641.

*Id.* The federal regulations issued under authority of the National Act establish the contours of the states' remedial, as distinguished from regulatory, jurisdiction. Title 24 C.F.R. § 3282.11[4] highlights a clear distinction between the National Act's invitation to the states to cooperate in regulating and standardizing the mobile home construction industry, and the residual power vested in the states to make available conventional remedies for individual purchasers. According to the regulation, the states' initiative in establishing remedial measures to benefit individuals does not interfere with the National Act's brand of enforcement.

## B. The Texas Act

■ Prior to the enactment of the National Act, Texas had established a less comprehensive statutory framework for regulating mobile home location and siting. Acts 1969, 61st Leg., p. 1954, ch. 656. In compliance with the National Act's call to uniformity, Texas revised and reenacted its law in 1975 to incorporate provisions necessary for approval of a state enforcement plan. Acts 1975, 64th Leg., p. 2035, ch. 674, eff. Sept. 1, 1975. In addition to entering into a partnership with the Secretary of HUD in the field of regulation, Texas included express remedies for individual purchasers, including the mandatory issuance of a warranty to the purchaser and the ability to bring a civil cause of action for damages.[5] In a series of amendments the Texas legislature expanded the basis of civil liability from the violation of one or two specific provisions of the Texas Act to noncompliance with any of its provisions. Acts 1975, 64th Leg., p. 2036, ch. 674 § 1, eff.

Sept. 1, 1975 (failure to comply with warranty); Acts 1977, 65th Leg., p. 288, ch. 139 § 1, eff. May 13, 1977 (failure to comply with warranty or construction standards); *see Howze v. Surety Corp. of Am.,* 564 S.W.2d 834, 838 (Tex.Civ.App.—Austin 1978), rev'd 584 S.W.2d 263 (Tex.1969). Violations of any of the Texas Act's prohibitions are now catalogued by incorporation with those practices identified as actionable under the Texas Deceptive Trade Practices Act. Art. 5221f § 17(d). Included in the expanded laundry list of deceptive practices is the Texas law prohibition against violating any National Act standard or HUD regulation. Art. 5221f § 6(a). It is this incorporation of a federal standard as the basis for a state cause of action which Countryside relies upon to contend that Gatlin's complaint states a cause of action arising under federal law.

## III. *Arising Under Jurisdiction*

In 1824 Chief Justice Marshall announced that a cause of action arises under the laws of the United States when a federal question "forms an ingredient of the original cause." *Osborn v. Bank of the United States,* 22 U.S. (9 Wheat) 738, 822, 6 L.Ed. 204 (1824). This test has since been overturned in a succession of formulations destined to bring clarity to one case and prove unworkable in the next. In *Smith v. Kansas City Title & Trust Co.,* 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1920), the Court reasoned that a federal forum was available to the plaintiff because "the right to relief depends upon the construction or application of the constitution or laws of the United States." *Id.* at 199, 41 S.Ct. at 245.[6] In

---

**4.** Title 24 C.F.R. § 3282.11 provides:
    A state may establish or continue in force consumer protections, such as warranty or warranty performance requirements, which respond to individual consumer complaints and so do not constitute systems of enforcement of the Federal standards regardless of whether the state qualifies as SAA [State Administrative Agency] or PIA [Primary Inspection Agency].
    *Id.*

**5.** Other states have adopted the national standards without including mechanisms to re-

spond to individual complaints. In *Stegall v. Kynaston,* 613 P.2d 1214, 26 Wash.App. 731 (Wash.App.1980), the court characterized both the national and Washington state laws as business statutes intended to regulate manufacture of mobile homes.

**6.** This formulation proved more expansive than the test used in *American Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916) (a suit arises under law that creates cause of action).

a striking dissent, Holmes responded that "the mere adoption by a state law of a United States law as a criterion or test, when the law of the United States has no force *proprio vigore,* does not cause a case under the state law to be also a case under the law of the United States, and so it has been decided by this Court again and again." *Id.* 255 U.S. at 214, 41 S.Ct. at 250.

The theme of Holmes' dissent was repeated in a later Supreme Court case involving a personal injury suit in which the state court plaintiff cited the violation of the Federal Safety Appliance Act (FSAA) as evidence of negligence under the Kentucky state law. In *Moore v. Chesapeake & O.R. Co.,* 291 U.S. 205, 54 S.Ct. 402, 78 L.Ed. 755 (1934), the Supreme Court acknowledged that the action presented construction of federal questions subject to its ultimate review, but declined to find that the cause of action arose under federal law as a basis for removal to federal district court. 291 U.S. at 214–15, 54 S.Ct. at 405–06. The Court recognized that the duty relied upon was prescribed by federal law, but stated:

> [I]t does not follow that a suit brought under the state statute which defines liability to employees who are injured while engaged in intrastate commerce, and brings within the purview of the statute a breach of duty imposed by the Federal Statute, should be regarded as a suit arising under the laws of the United States.

291 U.S. at 214–15, 54 S.Ct. at 406. The Court also noted that the federal act imposing duties did not attempt to lay down rules governing actions to enforce any concomitant rights. *Id.*[7]

The federal law's lack of accommodation for a private cause of action was also relied upon in *Till v. Unifirst Federal S & L Ass'n,* 653 F.2d 152 (5th Cir.1981). In *Till* the plaintiff based his cause of action on defendant's failure to comply with the National Flood Insurance Program and defendant's commission of state common law fraud and negligence. Finding that the federal act implied no private cause of action, the court noted that a claim does not arise under the laws of the United States if the relief sought is "based entirely upon a state cause of action in which regulations established by a federal statute are used merely as further evidence of the right to recover under state law." 653 F.2d at 155 n. 2. In *Till* the legislative scheme was enacted as a condition to federal aid. Despite the fact that the duty arose from federal law, the Court ruled that the district court had no original jurisdiction.[8]

### IV.  *Kaleidoscopic Backdrop*

In *Gully v. First National Bank,* 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936), Justice Cardozo plowed through the obligatory recitation of tests and formulations before conceding the hazards of abstraction. As a final prescription Cardozo announced that "[w]hat is needed is ... common-sense accommodation of judgment to kaleidoscopic situations." 299 U.S. at 117, 57 S.Ct. at 100. Unfortunately, Cardozo did not list the pragmatic factors that should guide this accommodation.[9]

Cardozo's idea at least encourages a recovery of the original notion of federal jurisdiction. The commitment to providing a

---

**7.** Several courts and commentators have attempted to reconcile *Moore* to other cases by narrowing the basis of the decision to a recognition that arising under jurisdiction cannot rest on defensive reliance on federal law. *See Kravitz v. Homeowners Warranty Corp.,* 542 F.Supp. 317, 319–20 (E.D.Pa.1982); *State of N.Y. by Abrams v. Citibank, N.A.,* 537 F.Supp. 1192, 1196 (S.D.N.Y.1982). The FSAA negated the affirmative defenses of assumption of risk and contributory negligence. Nothing in the *Moore* decision itself, however, indicates that the Supreme Court based its decision on such a narrow construction. Greene, Hybrid State Law in the Federal Courts, 83 Harv.L.Rev. 289, 324 n. 147 (1969). The Supreme Court reaf-

firmed *Moore* in *Crane v. Cedar Rapids & I.C. Ry.,* 395 U.S. 164, 165–67, 89 S.Ct. 1706, 1707–09, 23 L.Ed.2d 176 (1969).

**8.** A similar result was reached in *Mobil Oil Corp. v. Coastal Petroleum Co.,* 671 F.2d 419 (11th Cir.1982). The court held that the district court had no original jurisdiction when Florida had adopted a federal law as a standard to determine rights under state real property law.

**9.** The one distinction Cardozo did contribute, that between actual and potential disputes as to a federal law, has proved to be a difficult standard to employ before an actual trial of the case.

federal forum arose from a presumption that the federal courts would be more expert in interpreting federal law and from a concern that state courts would not be sympathetic to enforcement of federal laws. Cohen, The Broken Compass: The Requirement that a Case Arise "Directly" Under Federal Law, 115 U.Pa.L.Rev. 890, 893 (1967).

Measuring these original purposes against the need to provide a federal forum for actions under the Texas Manufactured Home Act yields mixed results. Congress no doubt has a legislative program to protect and a set of standards intended to be uniformly administered throughout the country. These goals can be protected, however, without invoking the original jurisdiction of federal district courts. The Texas law has been carefully designed to comply with federal law and to ensure commitment to the federal standards. *Majestic Industries, Inc. v. St. Clair,* 537 S.W.2d 297, 303 (Tex.Civ.App.—Austin 1976, writ ref'd n.r.e.). While the state's model of enforcement was designed with reference to the federal law, Texas has extended the implications of the federal law by providing redress for the individual. The remedy which Gatlin relies upon is state created. The Texas legislature, rather than the United States Congress, has been sympathetic to enforcement of these federal duties for the benefit of the individual purchaser. The area of individual relief is not occupied by the federal law in a preemptive sense; nor is it served through the implication of a private cause of action under the federal law. In addition, the need to enforce uniform national standards is served by existing means outside the judiciary. Section 5422(f) of the National Act provides for the Secretary's withdrawal of approval from any state plan the administration of which proves inadequate to accomplish the national purposes. The execution of state plans is evaluated on an annual basis. 42 U.S.C.A. § 5422(f).

Finally, any claim by the federal courts to superior insights into the standards cre-ated by the National Act would be pretentious at best. Texas has adopted the federal standards and regulations as its own. As is evident from Gatlin's complaint, it is unlikely that an individual purchaser will rely solely on noncompliance with federal standards as the basis for recovery.[10] The Texas state courts are certainly qualified to interpret the state's statutory and common law provisions on contract, warranty, misrepresentation, fraud, strict liability, and negligence. Declining original jurisdiction over consumer-oriented claims under the Texas Act will not raise an obstacle to the intended purposes of the National Act and it will prevent the creation of yet another vehicle for hearing traditional state claims in federal courts.

Accordingly, this action is hereby remanded to the state court with reasonable costs of removal to be taxed against Countryside. It is further ordered that a certified copy of this Order be mailed to the Clerk of the District Court for the 68th Judicial District Court of Dallas County, Dallas, Texas.

It is so ORDERED.

---

**10.** One of the particular provisions from the Texas Act relied upon by Gatlin requires notice to consumers of the risk from formaldehyde gas. Art. 5221f § 20. There is no similar counterpart in the National Act.