Botsford, J.
This is an action concerning the purchase of property in a designated flood hazard area located in Newton, Massachusetts. Plaintiffs, Timothy E. McKinley and Ursula K. McKinley (McKinleys), bring this action against defendants Northern Associates, Inc. (Northern Associates) and Citizens Bank (the Bank) for breach of contract (Count I), negligence (Counts II and V), unfair and deceptive practices (Count III), and negligent infliction of emotional distress (Counts IV and VI).
Pursuant to Mass.R.Civ.P. 12(b)(6), the Bank now moves to dismiss Counts Five and Six of McKinleys’ complaint.[1] Both counts are based on an alleged violation of notice provisions under the National Flood Insurance Act, as amended, 42 U.S.C. §4104a. For the reasons discussed below, the motion is allowed.
Background
The complaint alleges the following facts, which I accept as true for purposes of this motion. On June 4, 1991, the McKinleys purchased a house on property located at 229 Winchester Street in Newton, Massachusetts (the property). The property consists of a ranch home and approximately 17,900 square feet of land. Timothy McKinley is confined to a wheelchair, and the McKinleys bought the property with the intent of expanding the house to make it wheelchair-accessible as soon as they could afford to do so. Their purchase of the property was financed by a loan from the Boston Five Cents Savings Bank (now the defendant Bank). The property was used as collateral for the loan.
In connection with the mortgage loan, the defendant Northern Associates was retained by the Bank to prepare a mortgage inspection plot plan, including a flood plain certification. The McKinleys paid $150 to the Bank at the closing for the preparation of the plot plan and certification. Northern Associates stated in the plot plan that the property was not located in a flood hazard area. The Bank did not notify the McKinleys before the closing that the property was in a flood hazard area.
In October 1995, the McKinleys contacted a contractor to begin renovations to their home to make it wheelchair-accessible. They were informed by the contractor that they were prohibited from expanding their home because it was located in a flood hazard area. As a result of the location of the property, the McKinleys are unable to expand their home, and will receive less money for the property in the event of a sale than they would have if the house could have been expanded and if it were not located in a flood hazard *30 area. In addition, Timothy McKinley has suffered weight loss, headaches, depression and ill health as a result of his inability to expand his home to accommodate his disability.
The complaint contains two claims against the Bank, Counts Five (negligence) and Six (negligent infliction of emotional distress). In Count Five, the McKinleys contend that the Bank had a duty under the National Flood Insurance Act as amended, 42 U.S.C. §4104a (the Act),[2] to notify them that the property was located in a flood hazard area, and it breached its duty by failing to do so, causing the McKinleys damages described in the paragraph immediately above. In Count Six, the McKinleys contend that the Bank’s failure caused them emotional distress. The Bank now moves to dismiss Counts Five and Six on the following grounds: (1) the Act does not create a private cause of action under either Federal or State law; (2) the policy underlying the Act is to protect banks, not their customers; (3) the Act was not designed to prevent or address the type of damages alleged here; (4) Counts Five and Six do not state causes of action under Massachusetts common law; (5) the Bank acted reasonably in hiring Northern Associates to evaluate the property; and (6) allowing the causes of action set out in Counts Five and Six would impose a higher duty and greater liability on regulated lenders than on nonregulated lenders.
Discussion
When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the court must accept as true the well-pleaded factual allegations and any inferences that can be drawn in the plaintiffs favor from the complaint. Fairneny v. Savogran Co., 422 Mass. 469, 470 (1996); Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991). “[The] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set facts in support of his claim which would entitle him to relief." Nader v. Citron, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957).
Federal courts have uniformly held that the Act does not create an implied private cause of action under Federal law for damages resulting from a violation of its terms. See Mid-America Nat’l Bank of Chicago v. First Sav. & Loan Ass’n of South Holland, 737 F.2d 638 (7th Cir. 1984); Hofbauer v. Northwestern Nat’l Bank of Rochester, 700 F.2d 1197 (8th Cir. 1983); Till v. Unifirst Fed. Sav. & Loan Ass’n, 653 F.2d 152 (5th Cir. 1981); Arvai v. First Federal Sav. & Loan Ass’n, 539 F.Sup. 921 (D.S.C. 1982), aff'd, 698 F.2d 683 (4th Cir. 1983). Nevertheless, this does not necessarily preclude a plaintiff from bringing a private cause of action under the common law. See Till, 653 F.2d at 152, Hofbauer, 700 F.2d at 1197. Whether or not a state common law cause of action exists is an issue for the courts of the particular state to resolve.
The McKinleys’ negligence claim alleges that the Bank (1) had a duty under the Act to notify the plaintiffs before the closing that the property was located in a flood hazard area, (2) breached that duty, and thereby (3) caused harm to the McKinleys in the form of an inability to expand their home as they had planned and a reduction in the value of the home, as well as physical and emotional injuries. The negligent infliction of emotional distress is derivative, alleging that the Bank’s negligence in failing to notify the McKinleys of the flood hazard area as required by the Act caused emotional distress with physical symptoms. Whether either or both of these claims states a viable cause of a cause of action under Massachusetts law appears to be an issue of first impression.
1. Negligence.
The McKinleys argue that although the Federal courts have consistently interpreted the Act in a manner which does not imply a private cause of action for its violation, nonetheless the Massachusetts courts might do so as a matter of State law. The argument raises two questions: first, whether our courts would interpret the Act as “implicitly grant [tag] an independent ground for civil liability”[3] against federally insured mortgagee banks;[4] and second, if not, whether there is a common law claim of negligence which nonetheless might be brought.
With respect to the first question — whether the Act implicitly establishes a new civil cause of action against Federally insured lending institutions — it is substantively similar if not identical to the one asked in the Federal decisions cited above, viz., whether the Act implies a private cause of action.[5] Fundamentally, this is a matter of legislative intent. See St. Germaine v. Pendergast, 411 Mass. 615, 620 (1992) (“[w]e do not construe a safety statute to establish a new civil cause of action without express terms or clear legislative intent to that effect” [citation omitted]). See also Dinsky v. Framingham, 386 Mass. 801, 809-10 (1982) (discussing whether State Building Code and related statutory provisions evince a legislative intent to create a private cause of action against municipality for violations of the Code); Berdos v. Tremont & Suffolk Mills, 209 Mass. 489, 492 (1911). I find the Federal decisions persuasive that the intent and purpose of the Act was primarily to reduce, through required land use controls and a nation-wide mandatory program of flood insurance,[6] the Federal financial burden associated with flood disaster assistance. See, e.g., Mid-America Nat'l Bank of Chicago v. First Sav. & Loan Ass’n of South Holland, supra, 737 F.2d at 640-43; Hofbauer v. Northwestern Nat'l Bank of Rochester, supra, 700 F.2d at 1201; Till v. Unifirst Fed. Sav. & Loan Ass’n, supra, 653 F.2d at 156-57, 159-60. As for the notice requirement of the Act — the provision on which the McKinleys build their claim — "it too was enacted in part to help stem the development of flood hazard areas and further diminish the burden of *31 federal disaster assistance." Till, 653 F.2d at 159; see id. at 159 n. 16. While borrowers may have been among the intended beneficiaries of the Act — at least indirectly — they are not the principal ones; lenders and the Federal fisc share that distinction. See Hofbauer, supra, 700 F.2d at 1200; Till, supra, 653 F.2d at 158-59; Arvai v. First Fed. Sav. & Loan Ass’n, supra, 539 F.Sup. at 923.
In sum, the Act, which in direct terms establishes only duties to be carried out by Federal agencies in connection with their supervision of certain classes of lending institutions, simply does not demonstrate a clear legislative intent to authorize private borrowers to bring a direct suit for money damages against such lenders as a remedy for a statutory violation.[7] See Pendergast v. St. Germaine, supra, 411 Mass. at 620. Given this fact, no such direct cause of action will be implied.[8]
I turn to the second question, concerning a claim of common law negligence. Under Massachusetts law, “[i]t has long been thé rule . . . that violation of a statute does not by itself establish a breach of duty, for it does not constitute negligence per se . . . Rather, violation of a statute ... is only ‘some evidence’ of the defendant’s negligence as to all consequences the statute was intended to prevent.” Bennett v. Eagle Brook Country Store, Inc., 408 Mass. 355, 358-59 (1990). Accord, St. Germaine v. Pendergast, supra, 411 Mass. at 620. The plaintiff still must establish all the elements of a common law negligence case: duiy, breach of duty (negligence), causal relationship between negligence and harm, and damages. See Bennett, supra, 408 Mass. at 358.
Neither party argues that under the common law there is a direct duty on the part of a bank or other institutional lender to notify the borrower that the property on which the loan is sought is located in a flood hazard zone. But even if the violation of the Act alleged by the McKinleys is nonetheless considered some evidence of negligence on the part of the Bank, it would be evidence only as to those consequences which the Act was intended to prevent. Bennett, supra, 408 Mass. at 359. The goal of the Act was to avert or lessen financial losses or harm related to property damage or destruction caused by floods. See 42 U.S.C. §4001(a). See also, e.g., Hofbauer v. Northwestern Nat. Bank of Rochester, supra, 700 F.2d at 1201 (“[t]he purpose of the statute is to aid flood victims and lessen federal expenses for flood relief’). The McKinleys do not claim any damages related to flooding, but instead focus on injuries — an inability to expand their home, loss in market value and related emotional distress— which purportedly have resulted from the location of their home in a flood hazard area, whether or not a flood should ever occur. The evidentiary value of the Act for purposes of making out a cause of action in negligence does not reach this far. The McKinley’s negligence claim against the Bank must fail.
2. Negligent Infliction of Emotional Distress
Without a viable claim of negligence against the Bank, the McKinleys cannot succeed on their associated claim of negligent infliction of emotional distress: the existence of negligence on the Bank’s part is a necessary premise on which to construct a cause of action for negligent infliction of emotional distress. See Payton v. Abbott Labs, 386 Mass. 540, 557 (1982).[9]
ORDER
For the foregoing reasons, the motion to dismiss of the defendant Citizens Bank of Massachusetts is allowed.

These are the only counts against the Bank.

The Act, 42 U.S.C. §4104a provides in relevant part as follows:
4104a. Notice Requirements
(a) Notification of special flood hazards
(1) Regulated lending institutions
Each Federal entity for lending regulation . . . shall by regulation require regulated lending institutions, as a condition of making, increasing, extending, or renewing any loan secured by improved real estate or a mobile home that the regulated lending institution determines is located or is to be located in an area that has been identified by the Director under this chapter or the Flood Disaster Protection Act of 1973 as an area having special flood hazards, to notify the purchaser ... (or obtain satisfactory assurances that the seller . . . has notified the purchaser . . .) and the servicer of the loan of such special flood hazards, in writing, a reasonable period on advance of the signing of the purchase agreement... or other documents involved in the transaction. The regulations shall also require that the regulated lending institution retain a record of the receipt of the notices by the purchaser . . . and the servicer.

Bennett v. Eagle Brook Country Store, Inc. 408 Mass. 355, 358 (1990).

In addition to the Bennett case just cited, see St. Germaine v. Pendergast, 411 Mass. 615, 620 (1992) (discussing, and rejecting, contention that the State Building Code created a “new duty” on homeowners making them directly liable in damages for violations of the Code).

For a fairly recent discussion and review of Massachusetts cases dealing directly with the issue of judicially implied private remedies for statutory violations, see Ludlow Education Ass’n v. Ludlow, 31 Mass.App.Ct. 110, 118-20 and n.11 (1991).

A companion statute to the Act, which represents a key part of the same legislative scheme, is 42 U.S.C. §4012a(b). This section mandates that Federal agencies supervising banks and other lending institutions adopt regulations requiring such lenders not to make loans related to property in flood hazard zones unless the property owners first buy flood insurance. See Till v. Unifirst Fed. Sav. & Loan Ass’n, 653 F.2d 152, 156-57 (5th Cir. 1981).

As the Federal decisions indicate, in other sections of the flood insurance laws, Congress did provide expressly for private causes of action; the point is that if Congress had intended borrowers to be entitled to bring actions against lenders for violations of the Act, it would have so stated. See Till, supra, 653 F.2d at 160 (discussing 42 U.S.C. §§4053, 4072). Accord, Mid-America Nat’l Bank v. First Sav. & Loan Ass’n, 737 F.2d 638, 642 (7th Cir. 1984).

There seem to be three State courts which have considered whether a borrower might have a State law cause of *32 action against a lender based on a violation of the Act. All of them concluded that no such cause of action would lie. See R.B.J. Apartments, Inc. v. Gate City Sav. & Loan Ass'n, 315 N.W.2d 284, 290 (N.D. 1982); Pippin v. Burkhalter, 276 S.C. 438, 279 S.E.2d 603-04 (1981); Lehmann v. Arnold, 137 III.App.3d 412, 484 N.E.2d 473, 481 (1985).

It bears noting that in any event the McKinleys may not have a cause of action for negligence or negligent infliction of emotional distress against the Bank because the Bank appears to have complied with all its obligations under the Act. Before granting the loan to the McKinleys the Bank hired an engineering firm to evaluate whether the property was located in a designated flood hazard area. There is no indication that the firm, Northern Associates, was anything but an independent contractor. Any negligence on Northern Associates’ part in failing to identify the property as being located in a flood hazard area may well not be attributable to the Bank.