**INDIANA NATIONAL CORP.,**
Plaintiff-Appellant,

v.

Martin D. **RICH,** Norman **Rich,** Herbert M. **Spector,** Solomon **Weisgal,** Morris **Polack,** Jack **Polack,** MR Investment Associates, NR Investment Associates and Rich Investments, Inc., Defendants-Appellees.

No. 83–1038.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 23, 1983.

Decided July 19, 1983.

As Corrected July 21 and Oct. 5, 1983.

Roy L. Reardon, Simpson, Thacher & Bartlett, New York City, David A. Sirignano, S.E.C., Washington, D.C., for plaintiff-appellant.

Steven L. Bashwiner, Friedman & Koven, Chicago, Ill., for defendants-appellees.

Before CUDAHY and ESCHBACH, Circuit Judges, and GRAY, Senior District Judge.*

CUDAHY, Circuit Judge.

This case requires us to decide whether there is an implied private right of action for an issuer corporation to seek injunctive relief under Section 13(d) of the Securities Exchange Act (the "Act"), 15 U.S.C. § 78m(d) (1976). Section 13(d) requires any person acquiring more than 5% of a class of registered securities of a corporation to send to the issuer and to file with the S.E.C. a statement disclosing certain information about the person's identity and purposes. The other federal courts of appeal which have considered this question have concluded that an issuer corporation has an implied right of action to obtain injunctive relief against violations of Section 13(d). We agree, and in so doing reverse the judgment of the district court 554 F.Supp. 864 in this case.

I

Plaintiff, Indiana National Corporation ("Indiana National"), is a bank holding company which engages principally in the banking business through its wholly owned subsidiary, Indiana National Bank. Indiana National's stock is registered pursuant to Section 12 of the Securities Exchange Act, 15 U.S.C. § 78*l*, and is traded in the over-the-counter market. The defendants are a group of investors who acquired more than 5% of Indiana National's stock during 1981 and 1982. As required by Section 13(d) of the Act, they filed a Schedule 13D on September 4, 1981, and subsequently amended it six times between then and August 10, 1982.

On July 21, 1982, Indiana National filed a complaint in which it was alleged that the defendants' Schedule 13D contained materially false and misleading information, in that it failed to disclose the defendants' intention to acquire control of Indiana National, the Federal Reserve Bank's prior denial of an application by certain of the defendants for control of another bank, certain information concerning the members of the group and the true source of the funds used to acquire the shares. The plaintiffs sought a court order compelling defendants to file an amended Schedule 13D with full disclosure in the respects noted, as well as enjoining defendants from acquiring more shares of Indiana National, and compelling them to divest themselves of the shares they already held, which were alleged to have been unlawfully acquired.

In response, the defendants filed a motion to dismiss the complaint on the

---

* The Honorable William P. Gray, Senior District Judge of the United States District Court for the Central District of California, is sitting by designation.

grounds, in relevant part, that Indiana National, as the issuer of the stock, had no standing to assert a claim under Section 13(d) of the Act. On December 30, 1982, the district court granted the defendants' motion to dismiss on the ground that an issuer corporation does not have an implied right of action under Section 13(d) of the Act. Since we must accept all well-pleaded allegations of the complaint as true for purposes of evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the sole issue before us on this expedited appeal is whether an implied right of action exists in favor of an issuer under Section 13(d).

## II

In the course of the last decade, the Supreme Court has given us substantial guidance about when to imply a private right of action in the face of statutory silence. In 1975, the Court outlined a four-part test to determine the appropriateness of such a remedy: (1) whether the plaintiff is a member of a class for whose especial benefit the statute was enacted; (2) whether there is any explicit or implicit indication of congressional intent to create or deny a private remedy; (3) whether a private remedy would be consistent with the underlying purposes of the legislative scheme; and (4) whether the cause of action is one traditionally relegated to state law. *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975). Several years later, however, the Court indicated that these factors were not of equal weight but that the central inquiry, at which the first three factors were all directed, was one of congressional intent. *Touche Ross & Co. v. Redington,* 442 U.S. 560, 575, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979); *Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis,* 444 U.S. 11, 15–16, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979); *see also Allison v. Liberty Savings,* 695 F.2d 1086, 1088 (7th Cir. 1982).

■ The reduction of these questions to one of congressional intent imposes on us the challenging task of divining, as of a moment in the past, the collective state of mind of a body of legislators. But on this question as well, recent Supreme Court cases have shed additional light. In perusing the legislative history for signs of congressional intent, we are directed to pay particular attention to the contemporary legal context in which the statute was enacted. *See Cannon v. University of Chicago,* 441 U.S. 677, 694–703, 99 S.Ct. 1946, 1956–1961, 60 L.Ed.2d 560 (1979); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 378–82, 102 S.Ct. 1825, 1839–1841, 72 L.Ed.2d 182 (1982). Thus in *Cannon* the Supreme Court, in finding that there was a private right of action implied in Title IX of the Education Amendments of 1972, emphasized that Title IX was patterned after Title VI of the Civil Rights Act of 1964 and was enacted at a time when Title VI had been construed as creating a private remedy. 441 U.S. at 694–703, 99 S.Ct. at 1956–1961. Thus, the Court reasoned, Congress must be presumed to have been aware of the previous five years of judicial interpretation of Title VI and to have expected its enactment (Title IX) to be interpreted in conformity with those precedents. *Id.* at 696–99, 99 S.Ct. at 1957–1958. In *Merrill Lynch,* the Court described this approach in more detail:

> In determining whether a private cause of action is implicit in a federal statutory scheme when the statute by its terms is silent on that issue, the initial focus must be on the state of the law at the time the legislation was enacted.... When Congress acts in a statutory context in which an implied private remedy has already been recognized by the courts, [ ] the inquiry logically is different. Congress need not have intended to create a new remedy, since one already existed; the question is whether Congress intended to preserve the pre-existing remedy.

456 U.S. at 378–79, 102 S.Ct. at 1839. Thus the Court was led to conclude that, when Congress undertook reexamination and significant amendment of a statute while leaving intact the provisions under which the federal courts had implied a cause of action,

the evidence was that Congress had affirmatively intended to preserve that remedy. *Id.* at 381–82, 102 S.Ct. at 1840–1841. This approach, construing a statute in light of the contemporary legal context in order to determine whether Congress intended that a private right of action be implied, has recently been reaffirmed by the Supreme Court in *Herman & MacLean v. Huddleston,* —— U.S. ——, 103 S.Ct. 683, 689, 74 L.Ed.2d 548 (1983); and we shall make use of it in analyzing the case at hand.

### III

■ The Williams Act amendments to the Securities Exchange Act were passed in 1968 in response to the growing use of cash tender offers as a means for achieving corporate takeovers. *Piper v. Chris-Craft Industries, Inc.,* 430 U.S. 1, 22, 97 S.Ct. 926, 939–940, 51 L.Ed.2d 124 (1977). The purpose of the Williams Act was to insure that public shareholders facing a tender offer or the acquisition by a third party of a large block of shares possibly involving a contest for control be armed with adequate information about the qualifications and intentions of the party making the offer or acquiring the shares. *See Rondeau v. Mosinee Paper Corp.,* 422 U.S. 49, 58, 95 S.Ct. 2069, 2075–2076, 45 L.Ed.2d 12 (1975); S.Rep. No. 550, 90th Cong., 1st Sess. 2 (1967). Whereas corporate acquisitions by proxy solicitations or by exchange offers of securities were subject to registration and disclosure requirements, *see* 15 U.S.C. §§ 78n, 77e, tender offers or acquisitions of substantial amounts of stock having a potential for control were not subject to similar requirements.

■ The Williams Act was intended by its sponsors to remedy this "gap" in federal regulation. In introducing the legislation on the Senate floor, for example, Senator Williams stated:

This legislation will close a significant gap in investor protection under the Federal securities laws by requiring the disclosure of pertinent information to stockholders when persons seek to obtain control of a corporation by a cash tender offer *or through open market or privately negotiated purchases of securities.*

113 Cong.Rec. 854 (1967) (emphasis supplied). *See also* H.R. Rep. No. 1711, 90th Cong., 2d Sess. 4, *reprinted in* 1968 U.S.Code Cong. & Ad.News 2811, 2814. Section 13(d) was to help fill the gap by requiring persons who acquired substantial interests in the equity securities of a company (and thus might be attempting to acquire control) to file a statement with the S.E.C. disclosing, among other things, the identities of all persons on whose behalf the purchases had been made, the number of shares acquired, the source and amount of funds used in making the purchase and the purpose of the purchases in relation to the acquisition of control; the statement was to be sent to the issuer corporation as well. 15 U.S.C. § 78m(d)(1).

At the time it was enacted, therefore, the Williams Act was consciously patterned upon the protections already available in the proxy rules, Section 14(a) of the Act, 15 U.S.C. § 78n. As former S.E.C. Chairman Manuel F. Cohen explained at the Senate hearings:

The procedures provided by the bill in the case of contested tender offers are analogous to those now followed when contending factions solicit proxies under the Commission's proxy rules.

Hearings on S. 510 Before the Subcomm. on Securities of the Senate Comm. on Banking and Currency, 90th Cong., 1st Sess. 16 (1967). And in 1968 it was already established that an issuer corporation had an implied private right of action under Section 14(a). *See Studebaker Corp. v. Gittlin,* 360 F.2d 692, 694–95 (2d Cir.1966); *General Time Corp. v. Talley Industries, Inc.,* 403 F.2d 159, 161 (2d Cir.1968), *cert. denied,* 393 U.S. 1026, 89 S.Ct. 631, 21 L.Ed.2d 570 (1969). Thus, although the Williams Act did not itself contain an explicit private right of action, the statute upon which it was modeled had already been held to contain such a right by implication. We are justified in assuming, as did the Supreme Court in an analogous situation in *Cannon,* that Congress was aware of this precedent when the Williams Act was enacted upon the model of a prior statute.

■ More important, the Williams Act has itself been twice amended; and on neither occasion did Congress avail itself of the opportunity to overturn the accumulating precedents for a private right of action for issuer corporations under Section 13(d). When the Act was amended in 1970, this Court had already assumed the existence of such a right of action, *Bath Industries, Inc. v. Blot,* 427 F.2d 97, 113 (7th Cir.1970); and by the time of the 1977 amendments, the Court of Appeals for the Second Circuit had explicitly addressed the issue and concluded in a landmark decision that a private right of action for issuer corporations must be implied under Section 13(d). *See GAF Corp. v. Milstein,* 453 F.2d 709, 719–20 (2d Cir.1971), *cert. denied,* 406 U.S. 910, 92 S.Ct. 1610, 31 L.Ed.2d 821 (1972). Moreover, the Supreme Court had assumed, without directly confronting the issue, that such a private right was available to issuer corporations, at least with respect to injunctive relief. *See Rondeau v. Mosinee Paper Corp.,* 422 U.S. 49, 59 n. 9, 95 S.Ct. 2069, 2076, n. 9, 45 L.Ed.2d 12 (1975). We are justified in presuming that Congress was aware of these judicial interpretations when the Williams Act was amended. *See Cannon v. University of Chicago,* 441 U.S. at 696–99, 99 S.Ct. at 1957–1958. Since Congress amended the Act while leaving this remedy intact, we conclude that the legislature affirmatively intended to preserve the remedy of a private right of action for issuer corporations under Section 13(d). *See Merrill Lynch, Pierce, Fenner & Smith v. Curran,* 456 U.S. at 381–82, 102 S.Ct. at 1840–1841.

In reaching a conclusion opposite to the one we reach here, the district court, following *Gateway Industries, Inc. v. Agency Rent A Car, Inc.,* 495 F.Supp. 92 (N.D.Ill. 1980), emphasized that the Securities Exchange Act expressly includes several methods for enforcing the disclosure requirements of Section 13(d), most notably, remedies available through action by the S.E.C. itself. *See* 15 U.S.C. § 78u. The district court also noted that other sections of the Securities Exchange Act expressly provide for private rights of action, *see, e.g.,* 15 U.S.C. § 78i(e), and concluded that the provision of these explicit remedies was evidence that Congress intended *not* to provide a private right under Section 13(d).

We do not believe that this argument, based on the doctrine that *expressio unius est exclusio alterius,* compels such a conclusion in this case. The Supreme Court's most recent case on implied private rights of action explicitly rejects the notion that the availability of an express remedy in a statute precludes the implication of a private right of action as well. *Herman & MacLean v. Huddleston,* 103 S.Ct. at 687–90. The Court in *Huddleston* also reaffirmed the analysis, based on *Cannon* and *Merrill Lynch,* that revision of the securities laws in light of a line of cases allowing private suit, without overturning those precedents, should be taken as evidence (like that in the case before us) that Congress assumed the existence of the private remedy and intended to ratify it. *Id.* at 689.

Our conclusion is further bolstered by the fact that such an interpretation of the statutory provision at issue is the only construction which can make the Section 13(d) disclosure requirements effective at all. *See Huddleston,* 103 S.Ct. at 689–90. The filing required by Section 13(d) is sent to the S.E.C. and to the issuer corporation; it is not disseminated to the shareholders, for whose protection the information is required. The S.E.C., as friend of the court, has told us that it is unreasonable to expect the Commission to police possible Section 13(d) filing violations.[1] The only party with both the capability and incentive to pursue these violations is the issuer corporation. Our conclusion that Congress intended that a private right of action for an issuer corporation be implied under Section 13(d) is thus inescapable if the objectives of the statute are to be realized.

1. In fiscal 1982, 1,574 Schedule 13D's and 3,673 amendments to those reports were filed with the S.E.C., and these were only a small percentage of the disclosure documents filed with the Commission that year. S.E.C. Amicus Brief at 29.

## IV

The appellees contend, however, that an issuer corporation has no right of action under Section 13(d) under the analysis outlined by the Supreme Court in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). First of all, we doubt whether the *Cort* four-factor analysis is still the proper test to apply in circumstances such as this. The Supreme Court seems to have put an entirely new gloss upon the *Cort* test in its most recent opinions. Instead of *Cort*, as such, it has moved to a direct consideration of the underlying issue of legislative intent. *See Merrill Lynch*, 456 U.S. at 393, 102 S.Ct. at 1847; *Transamerica Mortgage Advisors*, 444 U.S. at 23, 100 S.Ct. at 249; *Touche Ross*, 442 U.S. at 575, 99 S.Ct. at 2488–2489. In rejecting a simple application of the *Cort* factors, the Court said in *Touche Ross:*

> It is true that in *Cort v. Ash*, the Court set forth four factors that it considered "relevant" in determining whether a private remedy is implicit in a statute not expressly providing one. But the Court did not decide that each of these factors is entitled to equal weight. The central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action. Indeed, the first three factors discussed in *Cort*—the language and focus of the statute, its legislative history, and its purpose, see 422 U.S., at 78 [95 S.Ct. at 2087–2088] are ones traditionally relied upon in determining legislative intent.

442 U.S. at 575–76, 99 S.Ct. at 2489. In this formulation, the Court seems not only to have abandoned an explicit point-by-point *Cort* analysis for the underlying inquiry about congressional intent but also to have recharacterized the first three *Cort* factors as being equivalent to statutory language, legislative history and purpose.

 For these reasons, the appellees' argument based upon the fact that issuer corporations are not "the class for whose especial benefit Section 13(d) was enacted," *see* Appellees' Brief at 13, is of questionable

relevance once we have found, as we have above, that Congress intended to confer a private right of action upon the corporation. It is, of course, clear from the legislative history that Section 13(d) was not intended to protect incumbent management or to discourage takeover bids, *see* S.Rep. No. 550, 90th Cong., 1st Sess. 3 (1967); H.R.Rep. No. 1711, 90th Cong., 2d Sess. 4 (1968); *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 58–59, 95 S.Ct. 2069, 2075–2076, 45 L.Ed.2d 12 (1975). Its sole purpose was the protection of shareholders.[2] *Piper v. Chris-Craft Industries*, 430 U.S. at 35, 97 S.Ct. at 946. The manner in which such protection is to be provided, however, is by generating a "fair fight" between the incumbent management and the persons believed to be seeking to acquire control, in order that the shareholders may make an intelligent decision between them when called upon to do so. Yet the shareholders have neither the knowledge nor the capacity to ensure that Section 13(d) is enforced and a "fair fight" thus provided. In this respect and for this limited purpose, therefore, the issuer corporation acts on the shareholders' behalf in bringing a suit for injunctive relief until an accurate Schedule 13(d) is filed. Without question, incumbent management does not represent the interest of the shareholders in relation to who ultimately *wins* any potential struggle for control but only insofar as corporate management acts to ensure the dissemination of accurate information about the identity, background and purpose of the persons possibly seeking control of the corporation. In this sense, the corporation's standing to sue under Section 13(d) is representational. Of course, presumably there are many circumstances where both the management and the shareholders are interested, sometimes quite realistically and sometimes only theoretically, in preventing the injury to the corporate interest which would result from a takeover by persons who are either incompetent or intent upon plundering the corporate assests.

Our conclusion that an issuer corporation has a right of action under Section 13(d)

---

2. Shareholders are, therefore, presumably the class for whose especial benefit Section 13(d) was enacted. But the shareholders are not capable of protecting their own interests with respect to the accuracy of information supplied.

brings the law in this circuit into accord with the conclusions of all the other circuits which have considered this question. In *GAF Corp. v. Milstein,* 453 F.2d 709, the Second Circuit concluded that "the obligation to file *truthful* statements is implicit in the obligation to file with the issuer, and, *a fortiori,* the issuer has standing under Section 13(d) to seek relief in the event of a false filing." 453 F.2d at 720 (emphasis in the original). The First Circuit in *General Aircraft Corp. v. Lampert,* 556 F.2d 90 (1977), held that when there is a finding that a Schedule 13D is incomplete, inaccurate or false, the corporation has a right to injunctive relief "until the Schedule 13D is amended to reflect accurately their [the investing persons'] intentions." 556 F.2d at 97. Similarly, the Eighth Circuit has upheld a target corporation's standing to maintain an equitable action involving the completeness and truthfulness of a Section 13(d) filing and to secure equitable relief requiring the purchaser to file an accurate, truthful and complete Schedule 13D in order to make a "full and fair disclosure." *Chromalloy American Corp. v. Sun Chemical Corp.,* 611 F.2d 240, 248 n. 16 (1979). Moreover, the Fourth Circuit, following the reasoning in all these cases, concluded that a target corporation has the right to seek injunctive relief to enforce the filing of a complete and accurate Schedule 13D. *Dan River, Inc. v. Unitex Ltd.,* 624 F.2d 1216, 1224 (1980), *cert. denied,* 449 U.S. 1101, 101 S.Ct. 896, 66 L.Ed.2d 827 (1981). Insofar as our conclusion that the issuer corporation in the case at hand has a similar right to seek injunctive relief under Section 13(d) conflicts with *Gateway Industries, Inc. v. Agency Rent A Car, Inc.,* 495 F.Supp. 92

(N.D.Ill.1980),[3] and *Sta-Rite Industries, Inc. v. Nortek, Inc.,* 494 F.Supp. 358 (E.D.Wis. 1980), we disapprove the conclusions in those cases.

## V

As an alternative basis on which to affirm the judgment of the district court dismissing the amended complaint in this case, the appellees urge that Indiana National cannot demonstrate irreparable harm because the defendants cannot acquire control of a bank without elaborate disclosure and a hearing before the Federal Reserve Board, under the Change in Bank Control Act, 12 U.S.C. § 1817(j). The district court did not address this argument in its opinion. However, we do not see the relevance of remedies provided under the Change in Bank Control Act to the interests at stake here. Although the statute does require a party seeking control of a bank to make disclosures to the Federal Reserve Board, 12 U.S.C. § 1817(j)(6), the grounds upon which the Federal Reserve may disapprove such an acquisition seem to be aimed at the protection of depositors of the bank, not of its shareholders, as well as protection of the general public against monopolization of the banking industry. *See* 12 U.S.C. § 1817(j)(7). The remedies provided by the Change in Bank Control Act[4] thus say little about the question whether the issuing corporation in the case before us has been irreparably harmed by the alleged failure of the defendants to make the disclosures required by the Williams Act. We therefore reverse and remand this case to the district

---

**3.** The district court in *Gateway Industries,* while conceding that the decisional authority from other circuits uniformly favored the implication of a private right of action for an issuer corporation, held that such a conclusion was not justified, given the specification of other remedies in the Williams Act and the recent reluctance of the Supreme Court to infer the existence of such rights. 495 F.Supp. at 95–99. The approach taken by the court in *Gateway,* as we have discussed above, has been modified by the most recent Supreme Court cases, which hold that the inclusion of an explicit remedy in a statute does not preclude the implication of a private right as well, *Herman &*

*MacLean v. Huddleston,* —— U.S. ——, 103 S.Ct. 683, 74 L.Ed.2d 548, and in which the Court has indicated its willingness to infer such a remedy in a proper case, *see id.; Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182.

**4.** As appellants point out, moreover, the Change in Bank Control Act does not provide for a hearing unless the acquisition is disapproved, 12 U.S.C. § 1817(j)(4), and, in any event, the target company is not entitled to participate in the hearing.

court for a determination whether injunctive relief is appropriate.

The judgment of the district court is hereby

REVERSED AND REMANDED.

