737 F.2d 638
 MID-AMERICA NATIONAL BANK OF CHICAGO, not personally but as
Trustee pursuant to a Trust Agreement dated May 1,
1981, and known as Trust Number 1575, et
al., Plaintiffs-Appellants,
v.
FIRST SAVINGS AND LOAN ASSOCIATION OF SOUTH HOLLAND, et al.,
Defendants-Appellees.
 No. 83-1716.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 17, 1984.
Decided June 15, 1984.
 
 Arnold H. Landis, Law Office of Arnold H. Landis, Chicago, Ill., for plaintiffs-appellants.
 Glen H. Kanwit, Hopkins & Sutter, Chicago, Ill., for defendants-appellees.
 Before CUMMINGS, Chief Judge, COFFEY, Circuit Judge, and BEATTY, District Judge.*
 CUMMINGS, Chief Judge.
 
 
 1
 This appeal presents the issue of whether an implied right of action exists in favor of borrowers against lenders under the National Flood Insurance Program (the "Flood Program"), 42 U.S.C. Secs. 4012a(b) and 4104a. The district court granted defendants' motion to dismiss, holding that no such implied right of action exists under Sections 4012a(b) and 4104a, and we affirm.
 
 
 2
 * The named plaintiffs are ten individuals, being five husbands and wives, and the trustee of an Illinois land trust. Plaintiffs brought this action on their own behalf and on behalf of an alleged class against 27 federally chartered or insured commercial banks and savings and loan associations. Six of the defendant institutions extended mortgage loans to the named plaintiffs for the purchase of properties located in the southern Chicago metropolitan area. The remaining 21 defendants are alleged to have loaned money to a member of the plaintiff class in a situation similar to that of the named plaintiffs.
 
 
 3
 The named plaintiffs assert that the mortgaged property securing their loans is located in an area identified by the Department of Housing and Urban Development (HUD) or the Federal Emergency Management Agency (FEMA) as being prone to flooding. Plaintiffs claim that defendants violated 42 U.S.C. Sec. 4104a by failing to notify plaintiffs of the flood risk when plaintiffs acquired their loans, and that defendants violated 42 U.S.C. Sec. 4012a(b) by failing to require plaintiffs to purchase flood insurance to the extent of the loan amounts. Plaintiffs' property suffered flood damage, and plaintiffs assert their losses were uninsured. Although the above provisions do not expressly create a federal cause of action in favor of borrowers against mortgage lenders, plaintiffs seek to hold defendants liable for the losses and claim that an implied private right of action exists under Sections 4012a(b) and 4104a of the Flood Program.
 
 
 4
 Count I of plaintiffs' complaint alleges the above-mentioned federal cause of action. Counts II and III assert that defendants' actions violated state common law and the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Rev.Stat., ch. 121 1/2, Secs. 261-272.
 
 
 5
 Defendants brought a motion to dismiss, accepting plaintiffs' factual allegations as true in order to reach the dispositive legal issue. The district court granted defendants' motion, holding that no implied right of action exists under the Flood Program which would allow borrowers to sue their mortgage lenders. Since no independent basis for federal jurisdiction remained, the district court dismissed the pendent state claims without prejudice.[1] Plaintiffs appeal from the district court's memorandum opinion and order granting defendants' motion to dismiss.
 
 II
 
 6
 In 1975 the Supreme Court in Cort v. Ash, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26, set out a four-factor analysis by which to determine whether an implied right of action exists under a statute: (1) whether the plaintiff is a member of the class for whose "especial benefit" the statute was passed; (2) whether there is any indication of legislative intent, explicit or implicit, either to create a private right of action or to deny one; (3) whether a private right is consistent with the underlying purposes of the legislative scheme; and (4) whether the claim is one traditionally assigned to state law so that it would be inappropriate to infer a claim based on federal law. Cort v. Ash, 422 U.S. at 78, 95 S.Ct. at 2088.
 
 
 7
 The approach taken in Supreme Court decisions subsequent to Cort indicates that the determination whether an implied right of action exists under a statute need not be broken down into four purportedly separate factors. In these more recent cases the Supreme Court has focused on a comprehensive analysis of legislative intent instead of explicitly following the point-by-point Cort analysis. Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 23-24, 100 S.Ct. 242, 249, 62 L.Ed.2d 146; Touche Ross & Co. v. Redington, 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82. Indeed the first and third Cort factors are intimately related to the question of legislative intent. Touche Ross & Co. v. Redington, 442 U.S. at 575-576, 99 S.Ct. at 2488-2489. Pursuant to this development the second Cort factor--legislative intent--is the crucial issue, to be resolved in light of the statutory language, legislative history, and legislative purpose. Universities Research Association v. Coutu, 450 U.S. 754, 770, 101 S.Ct. 1451, 1461, 67 L.Ed.2d 662; Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. at 23-24, 100 S.Ct. at 249; Touche Ross & Co. v. Redington, 442 U.S. at 575-576, 99 S.Ct. at 2488-2489; Bassler v. Central National Bank, 715 F.2d 308, 310 (7th Cir.1983); Indiana National Corp. v. Rich, 712 F.2d 1180, 1185 (7th Cir.1983).
 
 
 8
 With this mode of analysis we now turn to the substantive issue in this case. The Fourth, Fifth, and Eighth Circuits have considered the precise issue before us and have held that no implied private right of action exists under Sections 4012a(b) and 4104a. Hofbauer v. Northwest National Bank of Rochester, 700 F.2d 1197 (8th Cir.1983); Arvai v. First Federal Savings & Loan Association, 698 F.2d 683 (4th Cir.1983); Till v. Unifirst Federal Savings & Loan Association, 653 F.2d 152 (5th Cir.1981). Accord Brill v. Northern California Savings & Loan Association, 555 F.Supp. 566 (N.D.Cal.1982) (Peckham, C.J.). Two state courts have reached the same result. R.B.J. Apartments, Inc. v. Gate City Savings & Loan Association, 315 N.W.2d 284 (N.D.1982); Pippin v. Burkhalter, 276 S.C. 438, 279 S.E.2d 603 (1981). Plaintiffs do not cite nor does our research disclose any reported decision not overruled that reaches a contrary result.[2] Upon an analysis of the statutory language, legislative history, and legislative purpose, this Court concludes similarly that no implied private right of action exists under Sections 4012a(b) and 4104a of the Flood Program.
 
 
 9
 The enactment initiating the Flood Program is the National Flood Insurance Act of 1968. The 1968 Act created a nationwide program to encourage the adoption by local communities of sound land use practices designed to reduce or avoid damage from flooding, and to encourage the purchase of flood insurance in designated flood hazard areas. Congress set forth the factors that formed the basis of the 1968 Act:
 
 
 10
 (a) The Congress finds that (1) from time to time flood disasters have created personal hardships and economic distress which have required unforeseen disaster relief measures and have placed an increasing burden on the Nation's resources; (2) despite the installation of preventive and protective works and the adoption of other public programs designed to reduce losses caused by flood damage, these methods have not been sufficient to protect adequately against growing exposure to future flood losses; (3) as a matter of national policy, a reasonable method of sharing the risk of flood losses is through a program of flood insurance which can complement and encourage preventive and protective measures; and (4) if such a program is initiated and carried out gradually, it can be expanded as knowledge is gained and experience is appraised, thus eventually making flood insurance coverage available on reasonable terms and conditions to persons who have need for such protection.
 
 
 11
 42 U.S.C. Sec. 4001(a). As a condition of eligibility for government-subsidized flood insurance, the 1968 Act required HUD-designated flood-prone communities to adopt local flood plain management policies to diminish potential flood damage. 42 U.S.C. Secs. 4022, 4102.
 
 
 12
 The availability of government subsidized flood insurance did not, however, provide adequate incentive to attract extensive local community participation in the Flood Program.[3] Accordingly, Congress promulgated the Flood Disaster Protection Act of 1973, which is combined with the 1968 Act at 42 U.S.C. Secs. 4001 et seq. Section 4106 of the 1973 Act, as originally enacted, required participation for the flood-prone community to be eligible for federal financial aid for general construction or acquisition purposes[4] as well as for financing by federally supervised private lending institutions.[5] The latter restriction was eliminated by Section 703(a) of the Housing and Community Development Act of 1977[6] and as amended is now a notice requirement mandating that the federal agencies[7] which supervise the mortgage lenders require the lenders to inform borrowers whether or not their properties would be eligible for federal disaster relief assistance in the event of a flood. 42 U.S.C. Sec. 4106(b).
 
 
 13
 The particular provisions upon which plaintiffs base their claim are 42 U.S.C. Secs. 4012a(b) and 4104a. Section 4012a(b), found at Section 102 of the 1973 Act, requires that:
 
 
 14
 Each Federal instrumentality responsible for the supervision, approval, regulation, or insuring of banks, savings and loan associations, or similar institutions shall by regulation direct such institutions not to * * * extend any loan secured by * * * real estate * * * in an area that has been identified by the Secretary [of HUD] as an area having special flood hazards * * * unless the building * * * and any personal property securing such loan is covered for the term of the loan by flood insurance in an amount at least equal to the outstanding principal balance of the loan * * *.
 
 
 15
 The regulations implementing this requirement are codified in 12 C.F.R. Sec. 22, issued by the Comptroller of the Currency (regarding banks), and 12 C.F.R. Sec. 523.29(b), issued by the Federal Home Loan Bank Board (regarding savings and loan associations).
 
 
 16
 Section 4104a, enacted in 1974,[8] empowers the federal supervisory agencies to require by regulation that the lending institutions notify borrowers a reasonable period in advance of closing that the property is located in a HUD-designated flood zone. 12 C.F.R. Secs. 22.6 and 523.29(e) require the notification pursuant to 42 U.S.C. Sec. 4104a, specifying that notice be given at least ten days prior to closing.
 
 
 17
 Neither Section 4012a(b) nor Section 4104a expressly creates a federal cause of action in favor of borrowers against mortgage lenders where the lenders do not direct borrowers to purchase flood insurance in the amount of the loan or where lenders do not notify borrowers of the HUD flood-risk area designation. Our analysis of these provisions as well as the entire statutory scheme of the Flood Program reveals no indicia of legislative intent to create an implied federal cause of action under Sections 4012a(b) or 4104a.
 
 
 18
 It is clear from the plain language of Sections 4012a(b) and 4104a that Congress specifically placed the responsibility of administering and enforcing those aspects of the Flood Program dealing with mortgage lenders with those federal agencies which supervise the lenders, viz., the Board of Governors of the Federal Reserve System, the Federal Deposit Insurance Corporation, the Comptroller of the Currency, the Federal Home Loan Bank Board, the Federal Savings and Loan Insurance Corporation, and the National Credit Union Administration. See 42 U.S.C. Sec. 4003. In addition, Congress expressly conveyed to the Comptroller of the Currency the authority to issue cease-and-desist orders against bank officers to terminate unsound practices, 12 U.S.C. Sec. 1818(b)(1), and the power to impose penalties for a national bank's failure to make required reports, 12 U.S.C. Sec. 161. Regarding federally-insured savings and loan associations, the Federal Home Loan Bank Board possesses the authority to issue cease-and-desist orders against savings and loan officers, 12 U.S.C. Sec. 1464(d)(2)(A), to terminate unsafe or unsound practices, 12 U.S.C. Sec. 1464(d)(4), to impose administrative remedies, including monetary penalties, 12 U.S.C. Sec. 1464(d)(8)(B), and to mandate affirmative action to correct such violations, 12 U.S.C. Sec. 1464(d)(2)(A). It is manifest that the existence of supervisory and enforcement authority at the administrative level suggests that broad private remedies were not intended. Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 20, 100 S.Ct. 242, 247, 62 L.Ed.2d 146; National Railroad Passenger Corp. v. National Association of Railroad Passengers, 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646.
 
 
 19
 Where Congress apparently intended a private cause of action in connection with the Flood Program it explicitly provided for a carefully tailored one. 42 U.S.C. Secs. 4053 and 4072 provide that flood insurance policyholders may sue their insurers in federal court in regard to disputes arising from the policies. And under 42 U.S.C. Sec. 4104(f), owners, lessees, and communities objecting to a HUD flood-hazard designation are given a federal cause of action in order to seek redesignation. The reasoning in Touche Ross & Co. v. Redington, 442 U.S. 560, 572, 99 S.Ct. 2479, 2487, 61 L.Ed.2d 82, is therefore pertinent wherein the Supreme Court stated "when Congress wished to provide a private damages remedy, it knew how to do so and did so expressly."
 
 
 20
 Further, an analysis of the legislative history and purpose indicates that the primary purpose behind the Flood Program was to diminish, by implementation of sound land use practices and flood insurance, the massive burden on the federal treasury of escalating federal flood disaster assistance.[9] Federally supervised mortgage lenders also benefit, especially from the requirement of Section 4012a(b) that borrowers purchase flood insurance in the amount of the loan. It is obvious that Congress also intended borrowers to benefit from both Section 4012a(b) and the notice provision of Section 4104a, but the Flood Program is primarily concerned with protecting the federally supervised and insured lenders since the flood insurance purchase requirement of Section 4012a(b) extends only to the amount of the outstanding loan balance and not to the borrower's equity. Accord Hofbauer v. Northwestern National Bank of Rochester, 700 F.2d 1197, 1200 (8th Cir.1983); Till v. Unifirst Federal Savings & Loan Association, 653 F.2d 152, 159 (5th Cir.1981).
 
 
 21
 Absent any indication that Congress intended a federal cause of action in favor of borrowers against lenders under Sections 4012a(b) and 4104a, this Court is not in a position to create such a cause of action. This result is congruous with the Supreme Court's reluctance in recent years to imply new causes of action in the absence of supportive legislative intent. See Universities Research Association v. Coutu, 450 U.S. 754, 101 S.Ct. 1451, 67 L.Ed.2d 662; Middlesex County Sewerage Authority v. National Sea Clammers Association, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435; Texas Industries, Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500; California v. Sierra Club, 451 U.S. 287, 101 S.Ct. 1775, 68 L.Ed.2d 101; Northwest Airlines, Inc. v. Transport Workers Union of America, 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750. We need not produce further analysis herein, for decisions cited supra of other federal courts addressing this precise question adequately canvass the issues.
 
 
 22
 We therefore affirm the district court's dismissal of this action.
 
 
 
 *
 The Honorable William L. Beatty, United States District Judge for the Southern District of Illinois, is sitting by designation
 
 
 [1]
 Subsequent to the issuance of the district court's memorandum opinion and order granting defendants' motion to dismiss, plaintiffs commenced a class action in state court, raising essentially the same state law claims that were alleged in this case
 
 
 [2]
 Two unpublished decisions have held that an implied private right exists in favor of borrowers against mortgage lenders under Section 4012a(b) and 4104a. Adlesperger v. Eureka Federal Savings & Loan Association, No. 79-1360 (D.Kan. Feb. 4, 1981); Fromdahl v. Century-21 Real Estate Center, No. 41899 (Minn.Dist.Ct., 3d Jud.Dist., June 19, 1980). On September 22, 1981, Adlesperger was dismissed on motion of the parties, suggesting that the parties had reached a settlement on the damage issue
 
 
 [3]
 See S.Rep. No. 93-583, 93d Cong., 1st Sess. 4, reprinted in [1973] U.S.Code Cong. & Ad.News 3217, 3220
 
 
 [4]
 Section 202(a) of the Flood Disaster Protection Act of 1973, 42 U.S.C. Sec. 4106(a)
 
 
 [5]
 Section 202(b) of the Flood Disaster Protection Act of 1973, 42 U.S.C. Sec. 4106(b), before amendment by the Housing and Community Development Act of 1977, Pub.L. No. 95-128, 91 Stat. 1111
 
 
 [6]
 Pub.L. No. 95-128, Sec. 703(a), 91 Stat. 1144 (codified at 42 U.S.C. Sec. 4106(b), as amended)
 
 
 [7]
 These agencies include the Board of Governors of the Federal Reserve System, the Federal Deposit Insurance Corporation, the Comptroller of the Currency, the Federal Home Loan Bank Board, the Federal Savings and Loan Insurance Corporation, and the National Credit Union Administration. See 42 U.S.C. Sec. 4003
 
 
 [8]
 Section 4104a provides:
 Each Federal instrumentality responsible for the supervision, approval, regulation, or insuring of banks, savings and loan associations, or similar institutions shall by regulation require such institutions, as a condition of making, increasing, extending or renewing (after the expiration of thirty days following August 22, 1974) any loan secured by improved real estate or a mobile home located or to be located in an area that has been identified by the Secretary under this chapter or Public Law 93-234 as an area having special flood hazards, to notify the purchaser or lessee (or obtain satisfactory assurances that the seller or lessor has notified the purchaser or lessee) of such special flood hazards, in writing, a reasonable period in advance of the signing of the purchase agreement, lease, or other documents involved in the transaction.
 
 
 [9]
 House Report No. 1585 addressed the purposes and objectives of the Flood Program:
 Heavy losses over the years from hurricanes in the coastal areas and from storms in inland areas of the Nation dramatize the lack of insurance protection against flood damage. Insurance protection against the risk of destruction caused by tornadoes and other natural castastrophes is generally available, but it is not available against the risk of flood loss.
 Communities along the seacoast or in a river basin become completely immobilized following a major flood. Usually they must depend on the Federal Government and voluntary relief agencies to provide various forms of assistance. Some State and local governments have limited programs to assist a flood-stricken area, but disaster relief from all of these sources is inadequate to provide for the necessary restoration of heavily damaged areas. These facts underline the need for a program which will make insurance against flood damage available, encourage persons to become aware of the risk of occupying the flood plains, and reduce the mounting Federal expenditures for disaster relief assistance. (emphasis added)
 H.R.Rep. No. 1585, 90th Cong., 2d Sess., reprinted in [1968] U.S.Code Cong. & Ad.News 2873, 2966-2967, quoted in Till v. Unifirst Federal Savings & Loan Association, 653 F.2d 152, 159 n. 14 (5th Cir.1981). For further evidence of the congressional concern over the strain on the federal fisc due to flood damage, see S.Rep. No. 93-583, 93d Cong., 1st Sess., reprinted in [1973] U.S.Code Cong. & Ad.News 3217, 3218-3220, 3223.