## CHAMPION PARTS REBUILDERS, INC., Plaintiff,

v.

## CORMIER CORPORATION, et al., Defendants.

No. 86 C 8906.

United States District Court, N.D. Illinois, E.D.

Dec. 16, 1986.

Randall L. Mitchell, Peter V. Baugher, Paul E. Lehner, Philip Fertik, Adams, Fox, Adelstein & Rosen, Chicago, Ill., William G. McGuinness, William Freilich, Fried, Frank, Harris, Shriver & Jacobson, New York City, for plaintiff.

Richard C. Nelson, Martha V. Gordon, Concord, N.H., Albert A. Notini, Bedford, N.H., Ovide M. LaMontagne, Devine, Millimet, Stahl & Branch, Manchester, N.H., Stephen J. Landes, Holleb & Coff, Ltd., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Champion Parts Rebuilders, Inc. ("Champion") sues a large group of defendants, charging they have acquired control of a majority or near-majority of Champion stock through false and misleading filings and solicitations in violation of Securities

Exchange Act of 1934 ("1934 Act") §§ 13(d) ("Section 13(d)") and 14(a) ("Section 14(a)") and seeking equitable relief for those violations. In the midst of expedited discovery, preparatory to a scheduled December 29 preliminary injunction hearing, principal defendants Cormier Corporation ("Cormier") and 15 allegedly-affiliated individuals (all 16 are collectively "Cormier-Navon Defendants") have filed what they mistakenly term a motion for summary judgment[1] on Champion's 1934 Act claims:

1. They challenge Champion's right to any relief under Section 13(d) beyond the filing of a curative Schedule 13D.

2. They assert the absence of any liability generally, and the unavailability of injunctive relief specifically, under Section 14(a) as well.

For the reasons stated in this memorandum opinion and order, Cormier-Navon Defendants' motion (however viewed) is denied.

### Section 13(d)

Though some respectable authority exists to the contrary (see, e.g., *Liberty National Insurance Holding Co. v. Charter Co.*, 734 F.2d 545, 559–67 (11th Cir.1984)[2]), our Court of Appeals is among the majority of courts holding an issuer corporation has an implied cause of action for violation of the Williams Act, pursuant to which Section 13(d) was enacted. *Indiana National Corp. v. Rich*, 712 F.2d 1180, 1182–85 (7th Cir.1983) confirmed such a right and reversed the district court's dismissal of an issuer corporation's complaint seeking various types of equitable relief:

1. to compel an amended Schedule 13D with full disclosure;

2. to enjoin further acquisition of shares by the offending party; and

3. to compel divestiture of previously-acquired "tainted" shares.

Because the discussion in *Indiana National, id.* at 1185 justified the private cause of action only by speaking of the need to compel an accurate Schedule 13D, Cormier-Navon Defendants argue that is the only permissible scope for injunctive relief—that once a wholly truthful Schedule 13D is of record, the issuer corporation's case is rendered moot.

True enough, no court should allow the neutral, "fair fight" goals of the Williams Act to be distorted into a purely incumbent-management-sheltering vehicle, any more than the same goals should be subverted by forging a takeover weapon for a prospective acquirer (see *Indiana National, id.* at 1185). And it is also true that a number of courts, in the course of recognizing private rights of action for an issuer corporation, have also spoken as though more extensive injunctive relief of the kind sought by Champion should not be granted—at least not ordinarily (see, e.g., *Gearhart Industries, Inc. v. Smith International, Inc.*, 741 F.2d 707, 716–18 (5th Cir. 1984); *Hubco, Inc. v. Rappaport*, 628 F.Supp. 345, 354–55 (D.N.J.1985)).

But any bright-line rule of the sort urged by Cormier-Navon Defendants would ignore two facts of corporate life:

1. When the issuer corporation acts as surrogate for its shareholders (*Indiana National*, 712 F.2d at 1185), it should seek to promote the corporate welfare as such (as differentiated from

---

**1.** When counsel for Cormier-Navon Defendants noticed up their motion, this Court explained the misunderstanding inherent in a so-called Rule 56 motion that says in their "Statement of Uncontested Facts":

> For purposes of their Motion for Summary Judgment *only*, and without waiving their rights to contest any facts regarding this litigation, the Cormier and Navon Defendants stated [sic] that all facts plead [sic] in plaintiff's complaint are uncontested.

See the Appendix to this Court's opinion in *Teamsters Local 282 Pension Trust Fund v. Angelos*, 649 F.Supp. 1242 (N.D.Ill.1986)

**2.** *Liberty National* dealt with the issuing corporation's right (or lack of right) to sue for an attempted forced divestiture of all the stock previously acquired by the Section 13(d) violator. It is unclear whether a corporate suit brought merely to force a truthful Schedule 13D would meet the same fate in the Eleventh Circuit. Thus *Liberty National* may or may not be entirely out of step with our Court of Appeals and the others that recognize an implied Section 13(d) cause of action for issuer corporations.

the welfare of incumbent management): the maximization of corporate wealth (and hence the wealth of shareholders). That ordinarily means maximizing the corporation's free market choices.

2. If any group has acquired control (or blocking control) through the delivery of false messages to the marketplace, it may have enabled itself—quite improperly—to pursue its own private agenda, rather than the one best for corporate shareholders generally.[3] Put another way, the very fact of a party's having lied in a Schedule 13D should raise (a) a concern as to *why* that was done and (b) a corresponding prima facie concern that general shareholder welfare may have been placed at risk to promote the lying acquirer's private purposes.

To be sure, the former shareholders who have already sold without adequate information may have an adequate remedy at law via a damage action, perhaps a class remedy (see, e.g., *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 60, 95 S.Ct. 2069, 2076–77, 45 L.Ed.2d 12 (1975); *Gearhart Industries*, 741 F.2d at 716). But *Indiana National* and like cases say the issuer corporation is properly in court not for former but for *existing* shareholders, whose interests may require forward-looking relief because the corporation's welfare (and therefore theirs) may have been adversely affected by the tainted acquisition of control or blocking control.

It is also worth observing that the implications of Cormier-Navon Defendants' position are enormously disturbing. There is no practical way in which the SEC, with its limited enforcement resources, can police all Schedule 13D filings. If the only thing a fraudulent filer could be required to do is to file truthfully, so *future* stock transactions can take place in a clean marketplace, the whole purpose of the Williams Act would be frustrated by the elimination of any incentive to comply with its requirements (see *Bath Industries, Inc. v. Blot*, 427 F.2d 97, 113 (7th Cir.1970), relied on in *Indiana National*, 712 F.2d at 1184). It would be much like a criminal justice system in which the apprehended lawbreaker is subject only to injunctive relief ("Go thou and sin no more")—not even to restitution, let alone other sanctions.

All this reduces comfortably to conventional preliminary-injunction law: If the issuer corporation can demonstrate the lack of an adequate remedy at law and the presence of irreparable injury to itself (including the existing shareholders for whom it acts), it should not be foreclosed from obtaining the equitable remedies needed to forestall or cure that injury. *Rondeau*, 422 U.S. at 57–65, 95 S.Ct. at 2075–79. This Court cannot now say—on the pleadings—Champion will be unable to make that showing. Cormier-Navon Defendants' motion is without merit.

### *Section 14(a)*

Cormier-Navon Defendants Mem. 14–15 did not give their Section 14(a) motion much space, nor did it deserve much. Com-

---

**3.** This is not mere idle speculation. According to Complaint ¶ 20, Cormier's sole executive officer, codefendant Odilon Cormier, has now told Champion's chief executive officer of his previously undisclosed plans:

1. to cause Champion to borrow additional amounts against its fixed assets;
2. then to spin off those assets to Champion's shareholders as limited partnership interests, with Champion as general partner;
3. to factor all Champion's accounts receivable (among other proposals for the conduct of Champion's business); and

**4.** "to sell CHAMPION through OPPENHEIMER [& Co., Inc.] in two years for an amount equal to $24 per share."

Complaint ¶ 29 amplifies that last plan as one "to sell CHAMPION to a large corporation at twice CHAMPION's current share value in 18 months." That kind of dramatic corporate restructuring and planned sellout (as contrasted, for example, with mere differences in views between management and the prospective buyer of stock as to their respective methods for running the ongoing business) exemplify the need for full disclosure so the investing market may make decisions about selling, holding or buying Champion stock in an informed climate.

plaint ¶ 44 specifically charges *defendants* with having solicited proxies, consents and authorizations in violation of Section 14(a) and the corresponding SEC Rules. Cormier-Navon Defendants distort that and the other relevant Complaint allegations by saying that because defendants are charged with having acted through Oppenheimer & Co., Inc. in those respects, no cause of action has been stated against defendants themselves.

Simply to state such arrant nonsense is to expose its poverty as a legal proposition. Experienced counsel ought to understand the real risk of advancing such untenable arguments is that of the boy who cried "Wolf!": the possibility that other, more responsible contentions may be viewed askance and thus tarred with the same brush.

And the same is true of Cormier-Navon Defendants' other assertion, in which they contest the availability of equitable relief against Section 14(a) violations. For that they understandably cite no authority. Given the fact that defendants' attack is leveled at the Complaint as such, coupled with the relevant standard of upholding complaints if any set of facts could be proved consistent with their allegations that would establish a right to relief (see *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984)), this argument is equally empty.

In sum, defendants' attacks on Complaint Count II's Section 14(a) claim deserve even less space than their proponents have given them. They too are denied.

### Conclusion

Cormier-Navon Defendants' mislabeled "summary judgment" motion—really addressed to Champion's Complaint—is denied. Expedited discovery will continue, and the Christmas-New Year season of "good will toward men" will be devoted (as scheduled) to the hearing on preliminary injunctive relief.