739 So.2d 869 (1999)
Kenneth Derryl NORRIS and Mary Ellen Klein Norris
v.
UNION PLANTERS BANK.
No. 98 CA 1581.
Court of Appeal of Louisiana, First Circuit.
June 25, 1999.
Rehearing Denied September 1, 1999.
*870 Madro Bandaries, Howard P. Elliott, Jr., New Orleans, for Plaintiffs/Appellants, Kenneth Derryl Norris Mary Ellen Klein Norris.
David M. Cohn, Baton Rouge, for Defendant/ Appellee, Union Planters Bank.
Before: CARTER, C.J., SHORTESS, and WHIPPLE, JJ.
CARTER, C.J.
Homeowners appeal the judgment of the trial court declaring that defendant, Union Planters National Bank (Union Planters), was authorized and entitled to purchase flood insurance on the homeowners' property and pass the premium cost on to the homeowners.

*871 FACTS
On February 21, 1992, Kenneth and Mary Norris (homeowners) refinanced their home located at 18509 Keystone Avenue, Greenwell Springs, Louisiana. The refinancing was through a mortgage executed in favor of Sunburst Mortgage Corporation. Sunburst Mortgage Corporation became Union Planters through a merger of the two institutions in December 1994.
By a letter dated September 19, 1996, Union Planters informed the homeowners that their property was located in a Special Flood Hazard Area, as determined by a map published by the federal government. The homeowners were told that they were required by law to purchase flood insurance and that failure to do so within forty-five days would result in the purchase of flood insurance by Union Planters with the premiums being passed on to the homeowners. Union Planters also informed the homeowners that if it were forced to purchase the flood insurance for them, that it could be at a price higher than that which could be procured by the homeowners through their own agent. On October 16, 1996, the homeowners were sent a second notice containing the same information.
Due to the homeowners' failure to obtain flood insurance within the forty-five day period, Union Planters purchased flood insurance for their property effective November 1, 1996. On November 27, 1996, Union Planters informed the homeowners of the purchase of the insurance policy and the deduction of $1,089.00 from their escrow account to pay for the premiums.
The homeowners filed suit against Union Planters on February 26, 1997, seeking a declaratory judgment on the issue of whether they were indebted to Union Planters in the amount of the premiums for flood insurance purchased for them. According to the petition filed by the homeowners, they claimed they had waived flood insurance coverage by the original terms of the mortgage and Union Planters was without authority to impose the cost of the policy on them.
On November 12, 1997, Union Planters filed a motion for summary judgment. On November 24, 1997, the homeowners sought leave of court to file an amended petition. However, the trial court granted Union Planter's motion for summary judgment before it granted the homeowners leave to amend their petition. The trial court signed the order granting the homeowners leave of court to file their amended petition the day after the summary judgment had been granted in open court.
The homeowners filed a motion for new trial claiming the trial court did not consider their amended petition, and that additional evidence had been discovered. Union Planters opposed the motion arguing that the trial court considered the arguments contained in the amended petition because they were presented in the homeowners' opposition to the motion for summary judgment. Union Planters also contended that the additional evidence was available prior to judgment and was irrelevant to the homeowners' claims anyway. Union Planters filed a motion to strike the homeowners' amended petition. The homeowners' motion for new trial was denied, and Union Planters' motion to strike was granted.
The homeowners appeal the decisions of the trial court granting Union Planters' motion for summary judgment, refusing to allow the homeowners to amend their original petition, and denying the homeowners' motion for a new trial.

DISCUSSION
A motion for summary judgment is a procedural device used to avoid a full scale trial when there is no genuine factual dispute. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. The summary judgment procedure is favored and is designed to *872 secure the just, speedy, and inexpensive determination of every action. LSA-C.C.P. art. 966. Rambo v. Walker, 96-2538, pp. 4-5 (La.App. 1st Cir.11/7/97); 704 So.2d 30, 32.
The burden of proof is on the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense. Thereafter, if the adverse party fails to provide factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. LSA-C.C.P. art. 966.
Appellate courts are to review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Rambo, 704 So.2d at 32-33.
The substantive law applicable to this case is the National Flood Insurance Act of 1968 (the Act), which created a nationwide program to encourage the adoption by local communities of sound land use practices designed to reduce or avoid damage from flooding, and to encourage the purchase of flood insurance in designated flood hazard areas. Mid-America National Bank of Chicago v. First Savings and Loan Association of South Holland, 737 F.2d 638, 640 (7th Cir.1984), cert. denied, 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 924 (1985). One of the stated purposes of the Act is to "require the purchase of flood insurance by property owners who are being assisted by Federal programs or by federally supervised, regulated, or insured agencies or institutions in the acquisition or improvement of land or facilities located or to be located in identified areas having special flood hazards." 42 U.S.C.A. § 4002(b)(4).
The applicable provisions of the Act regarding the purchase of flood insurance are found in 42 U.S.C.A. § 4012a(e), which provide in pertinent part:
(1) Notification to borrower of lack of coverage
If, at the time of origination or at any time during the term of a loan secured by improved real estate or by a mobile home located in an area that has been identified by the Director (at the time of the origination of the loan or at any time during the term of the loan) as an area having special flood hazards and in which flood insurance is available under the National Flood Insurance Act of 1968 [42 U.S.C.A. § 4001 et seq.], the lender or servicer for the loan determines that the building or mobile home and any personal property securing the loan is not covered by flood insurance or is covered by such insurance in an amount less than the amount required for the property pursuant to paragraph (1), (2), or (3) of subsection (b) of this section, the lender or servicer shall notify the borrower under the loan that the borrower should obtain, at the borrower's expense, an amount of flood insurance for the building or mobile home and such personal property that is not less than the amount under subsection (b)(1) of this section, for the term of the loan.
(2) Purchase of coverage on behalf of borrower
If the borrower fails to purchase such flood insurance within 45 days after notification under paragraph (1), the lender or servicer for the loan shall purchase the insurance on behalf of the borrower *873 and may charge the borrower for the cost of premiums and fees incurred by the lender or servicer for the loan in purchasing the insurance.
(4) Applicability
This subsection shall apply to all loans outstanding on or after September 23, 1994.
Union Planters asserts it is a national bank subject to federal supervision and regulation. This fact was undisputed, but the homeowners argued that Union Planters was only the servicing agent for the loan and was unable to force the purchase of flood insurance on them. The Federal National Mortgage Association (Fannie Mae) purchased the homeowners' loan by assignment dated January 2, 1997. Union Planters is the servicing agent on the loan for Fannie Mae.[1]
However, we note that the plain language of 42 U.S.C.A. § 4012a(e)(2) mandates that the servicers of the loans shall notify and if necessary, purchase the required flood insurance on behalf of the borrower. It is immaterial whether Union Planters is the actual lender or the servicer because its duty under the Act remains the same. Furthermore, at the time Union Planters purchased the flood insurance, Fannie Mae had not been assigned the loan, thus Union Planters was still the lender.
Union Planters also presented undisputed evidence that the loan was secured by property within a flood zone. Union Planters presented an affidavit from Debbie Christopher, the Flood Audit Division Coordinator of Union Planters, which stated that the property was located in Zone AE, a Special Flood Hazards Area, and that the property had been surveyed by Baton Rouge Land Surveying, Inc. and found to be in Flood Zone A-10, within Zone AE. The affidavit of Carl Jeansonne, a registered professional land surveyor employed by Baton Rouge Land Surveying, Inc., was also presented in support of the motion for summary judgment. Jeansonne determined that the homeowners' property was located in Zone A-10, within Zone AE of a Special Flood Hazards Area.
There was no proof offered to dispute the fact that the homeowners' property was located within a Special Flood Hazard Area. The homeowners asserted that Sunburst did not require the purchase of flood insurance. However, 42 U.S.C.A. § 4012a(e)(1) provides that flood insurance will be required if it is determined at any time during the term of the loan that the property is located in a special flood hazards area in which flood insurance is available under the Act. Further, 42 U.S.C.A. § 4012a (e)(4) notes that the subsection requiring flood insurance applies to all loans outstanding on or after September 23, 1994. The loan securing the homeowners' property was outstanding as of that date, accordingly it is governed by the requirements of the Act.
We also note that the homeowners were given the requisite statutory notice under 42 U.S.C.A. § 4012a (e)(1) and (2) through the letters sent by Union Planters Bank on September 16, 1996, and October 16, 1996.
The homeowners raised the issue that the amount of insurance purchased by Union Planters exceeded the amount of insurance that Union Planters was allowed to purchase. According to the homeowners, 42 U.S.C.A. § 4012a(b)(1) restricts the dollar amount of insurance to "an amount at least equal to the outstanding principal balance of the loan or the maximum limit of coverage made available under the Act with respect to the particular type of property, whichever is less." The homeowners argue that Union Planters could not require them to purchase flood insurance in the amount of $121,000.00. Rather, their flood insurance could not exceed the amount of the loan, which was *874 $74,750.00, or more correctly their loan balance as of November 1, 1996, which was $60,913.56.
Union Planters argues that 42 U.S.C.A. § 4012a and 24 C.F.R. § 203.16a establish a minimum, not a maximum threshold of coverage.
The limited jurisprudence on this subject guides our determination of this issue. As the United States Seventh Circuit Court of Appeals commented:
[A]n analysis of the legislative history and purpose indicates that the primary purpose behind the Flood Program was to diminish, by implementation of sound land use practices and flood insurance, the massive burden on the federal treasury of escalating flood disaster assistance. Federally supervised mortgage lenders also benefit, especially from the requirement of Section 4012a(b) that borrowers purchase flood insurance in the amount of the loan. It is obvious that Congress also intended borrowers to benefit from both Section 4012a(b) and the notice provision of Section 4101a, but the Flood Program is primarily concerned with protecting the federally supervised and insured lenders since the flood insurance purchase requirement of Section 4012a(b) extends only to the amount of the outstanding loan balance and not to the borrower's equity.
Mid-America National Bank of Chicago, 737 F.2d at 642-43.
Accordingly, we find as a matter of law, Union Planters purchased more flood insurance than they were authorized to purchase under the Act. We disagree with Union Planters' assertion that the Act establishes a minimum threshold of insurance coverage, but rather, our interpretation of the Act is consistent with the federal courts in Mid-America National Bank of Chicago, 737 F.2d at 642-43, and Hofbauer v. Northwestern National Bank of Rochester, Minnesota, 700 F.2d 1197, 1200 (8th Cir.1983), which find that flood insurance under 42 U.S.C.A. § 4012a(b) requires flood insurance for the amount of the outstanding loan balance and not the equity of the borrower.
We find the trial court improperly granted Union Planters' motion for summary judgment because it erred as a matter of law in allowing Union Planters to purchase a flood insurance policy in the amount of $121,000.00, which exceeded the amount of the balance of the homeowners' loan. We find there exists a material issue of fact as to the precise balance of the homeowners' loan which would provide the correct amount of insurance to be purchased.
Because we find the trial court improperly granted Union Planters' motion for summary judgment, we need not address the other assignments of error.

CONCLUSION
Based on the foregoing, we reverse the trial court's judgment granting Union Planters' motion for summary judgment and remand the case back to the trial court for further proceedings. Costs of the appeal are assessed against the defendant, Union Planters National Bank.
REVERSED AND REMANDED.
NOTES
[1] A servicing agent is defined as the person responsible for receiving any scheduled, periodic payments from a borrower. 42 U.S.C.A. § 4003(a).